Tiughman, C. J.
delivered the opinion of the Court.
David Montgomery and Jane his wife, who was a daughter *25 of Thomas Grubb, deceased, the plaintiffs below, brought this suit against William M'Cullough, executor of the last will and testament of George M'Cullough, deceased, on a penal bill dated the 14th of October, 1779, whereby the said George bound himself to the said Jans Monti> ornery, (then Jane Grubb) in the penalty of 300 pounds Pennsylvania currency, conditioned for the payment to the said Jane, of her legacy, as mentioned in her father’s will, to the full satisfaction of her mother, the widotu Grubb ; very soon after the date of this penal bill, George McCullough married Mrs. Grubb, the mother of yene, and sole executrix of the will of her husband, Thomas Grubb. This will was dated the 27th of May, 1777, and the testator died in May, 1779. He bequeathed to his daughter Jane, besides a specific legacy of a horse, saddle, and bridle, with a bed and its furniture, the sum of 150/. current money of the State of Pennsylvania when she came to the age of eighteen years. On the trial of the cause, in the Court below, the defendant’s counsel took three bills of exception to the opinion of the Court on points of evidence, and proposed eight questions, on which the opinion of the President was delivered in writing, and placed on the record.
It appears by the 1st bill of exceptions, that the plaintiff’s counsel offered to prove by the oath of Jeremiah Brown, that “ Thomas Grubb was considered the richest man in Little Britain township, had about 1000 acres of land, and a great deal of personal property, which went into the hands of George M’Cullough, by his intermarriage with the widow.” To this evidence, the defendant objected, but the Court admitted it. A principal point of dispute on the trial, was, in what kind of money the legacy of Jane, the daughter of Thomas Grubb, was payable ; that depended on the intent of the testator, which in cases of this kind may be shewn, by circumstances dehors the will. If the value of the testator’s property, in specie, was small, and the amount of legacies bequeathed by him, great, it would afford a strong presumption, that he could not have intended that the legacies should be paid in specie. It was proper therefore to admit evidence.of the value of his estate. But the evidence offered by the plaintiff, was of too loose a nature—the general reputation of the value of the property. The witness should have been confined to his own knowledge. Under that restriction.he might have been per *26 mitted to testify, as to the value of Grubb’s estate ; but the Court suffered him to go farther, and in that there was error.
The 2d. bill of exceptions shews, that the plaintiff offered to prove by the oath of Levi Sidwell, that “ after the death of George M’Cullough, Isabella M’Cullough, late Grubb, when on her death-bed,told him, that she was dissatisfied, and nothing could satisfy her, but the payment of the legacy to Jane, in specie.” To this evidence, also the defendant objected, but the Court admitted it. The gen eral rule is, that declarations, not under oath, are not evidence. Mrs. M’Cullough might have been examined as a witness ; the defendant had a right to the benefit of cross examining her, on oath, and such a cross examination was very necessary, as she had, together vyith her husband, George M’ Cullough, settled an account of her administration on the estate of her first husband, Thomas Grubb, in which'she had received credit, for 150/. paid to her daughter Jane, in full of this legacy : this account was settled, on her oath : clearly therefore, her subsequent declarations, without oath, that she was dissatisfied with the payment of the legacy, ought not to have been received.
By the 3d bill of exceptions, it appears, that the plaintiff offered in evidence, the record of an action brought to June Term, 1798, by Jane Evans, then a widow, now the wife of David Montgomery, and one of the plaintiffs in this cause, against George M’Cullough and Isabella his wife, executors of Thomas Grubb, deceased, for the recovery of the legacy, left to her, by her father the feaid Thomas Grubb ; also another record, of a suitbroughtto Azzg’WsiTermjlSOSjby the present plaintiffs against the said George M‘Cullough and wife, executors of the said Thomas Grubb, for the recovery of the same legacy, and a scire facias, after the death of the said George M’Cullough, against his executor, in order to bring him in, and make him a party to that suit. To this evidence, the defendant objected, but the Court admitted it. When it is considered, that this was offered as rebutting evidence, in order to remove the presumption of the payment of the legacy, arising from length of time, on which the defendant relied, it will appear at once, that it was evidence, material, and highly important. When a creditor suffers a long period of time to elapse, without demanding payment, or doing any act from which it may be inferred that he. keeps up his claim, a strong presumption *27 of payment arises ; because the conduct of the creditor cannot otherwise be well accounted for. But there is no ground for such presumption, when it' appears, that so far from remaining passive, the creditor has been prosecuting legal measures for the recovery of his demand. These records, therefore, were proper and powerful evidence, to rebut the presumption, set up by the defendant; and the Court was right in admitting them.
In order to judge of the opinion given by the President of the Court of Common Pleas, to the eight questions proposed by the defendant’s counsel, it will be necessary to state some of the evidence given by the defendant. On the 6th Miirch, 1781, George M'Cullough arid' wife, deposited in the Orphans’ Court of Lancaster county, 150/. in continental paper money, in payment of Jane Grubb's legacy, alleging that this identical money had been received in payment of a debt' dire to the estate of Thomas Grubb. On the 29th of June, 1791, the said M’Cullough and wife, settled in the Orphans’ Court their administration accounts on the estate of Thomas Grubb, in which they were credited for 150/., paid to Jane Grubb in full of her legacy j but being dissatisfied with the opinion of the Orphans’ Court on several items of the account, they appealed to the Supreme Court at January Term, 1792, and’that Court, on the 20th March, 1804, reversed the judgment of the Orphans’ Court, as to the sum of eighty seven pounds and two shillings, directed to be charged against the accountant, and ordered that the accountant should be credited with that sum.
The questions proposed to the Court below, though eight in number, may he reduced to three points. 1st. Ought the jury to have been directed to presume payment of the bond on which this suit was brought, or of the legacy which the bond was intended to secure. 2d. Was the bond, or the legacy, such a debt as ought to have been reduced to its value in specie, according to the scale of depreciation established by the act of 3d of April, 1781. 3d. Were the proceedings in the Orphans’ Court, and the Supreme Court, conclusive evidence of the payment of Jane Grubb's legacy ?
1st. It is very clear, that the length of time between the date of the bond and the commencement of this suit, considering all circumstances, aiforded no ground for a presump *28 tion of payment. In general, when a debt is due on bond, apd twenty years elapse, without, any payment of principal or interest, or any demand of payment by the obligee, it must be presumed that the.debt is paid, because it is contrary.to the usual course of human affairs, that a creditor should acquiesce s0 long- without receiving satisfaction. But the presumption ceases, when it appears that the creditor has not acquiesced, but endeavoured to obtain payment. Now in the first place, although this penal bill bears date in October, 1779, yet the legacy secured by it was not payable till the 8th of August, 1'783, when Jane Qrubb arrived at the age of eighteen years ; counting from that.period, it appears, that after the expiration of only fifteen years, Jane Grubb, then the widow Evans, commenced an action of debt against George McCullough and wife, for the recovery of her legacy.. This suit was brought to February Term, 1798, and abated by the plaintiff’s marriage with her present husband, David Montgomery. The action was renewed by the' present plaintiffs, against M'Cullough and wife, to August Term, 1806, and from that time to the present moment, the plaintiffs have been endeavouring tó obtain payment of the legacy, either by an action of debt, in which the legacy was demanded, or by an action on the penal bill of George. M'Cullough. It is immaterial which form of action was used, for in either, the recovery of the legacy was the object of the suit. When'the President of the-Court of Common Pleas left it to the jury to determine upon, this evidence, whether the usual presumption arising from length of time, was not rebutted by the circumstances of the case, he charged more favourably to the defendant, than he had any right to expect, for the charge might very properly have been, that, taking alb things into consideration, no presumption of payment arose.
2. The President charged, that inasmuch as the legacy to fane Grubb was not payable till her age of eighteen, at which time the continental paper money was not current; the case was not within the Act of April, 1781, and the plaintiff was entitled to recover the nominal amount of the legacy in specie. Was this opinion right or wrong? By the 4th Section of the Act of 3d April, 1781, it was enacted, that, ‘‘ in all cases between debtors and creditors, for debts or demands due and payable, or incurred before the 1st Margh, *29 1791, where the parties cannot otherwise agree* it shall be lawful for the Court to appoint auditors, who- shall have full ■power to- hear and examine the parties upon interrogatories, and also the witnesses, papers, and proofs, of the parties, and to liquidate and settle all debts and demands, and coritroversies subsisting hetween them, agreeably to the directions of this Act, where that- can be done ; but in cases where the Act shall not apply, then to settle the. samé according to equity and good conscience,'upon due consideration had, of the nature and circumstances of the case.” Now let us consider the nature of this case, and see how the Act of Assembly bears on it. Although the penal bill, on which this suit was brought, was a contract entered into between the 1st of _"January, 1777, and 1st of March., 1781, (in which case the Act of Assembly was to bé .applied, as appears by the 1st and 2d sections,) yet the real object of the obligation was, to secure the payment of a legacy, which is not a contracts and moreover, a legacy.not payable till.the year 1783; so that no suit could have been maintained on the penal bill, before the year 1783. It appears therefore, that this was one 6f the cases to'be settled by auditors, according to equity and_ good conscience, and not subject to a peremptory reduction, by the scale of rdepreciátion laid down in the Act of Assembly. And in truth, if ever there was a case, which called for a settlement according to equity and good conscience, it was this. It is extremely difficult, I might say impossible, to decide with certainty, what the testator intended. At the date of his will, (27th óf May, 1777,) the scale of depreciation is, two and a half paper, for one specie dollar.' At the •testator’s death, (May, 1779,) the difference between paper, and specie, was, as twenty-four to one. At that time, the will was consummate. Reckoning twenty-four for one, the legacy of four hundred dollars, was reduced to sixteen dollars and two thirds. . Is it .possible that a man of large fortune, who gave a tract of land to several of his sons,' could mean to provide for his daughter, by'giving her a horse, saddle, and bridle, and a bed, and furniture, with a legacy of only sixteen dollars and sixty-six cents ? The question will not bear a moment’s consideration. But what did he mean ? Most probably he'süpposed, as was generally supposed, that before his daughter came to the age of eighteen, the currency *30 of the country, (which both at the time of making, his will, and at his death, was in a' state of progressive depreciation,) would be fixed at the value it had sustained before the war. But auditors might do justice, by taking into consideration, ^ value of his estate, the circumstances of the times, and other matters which might throw light on the.intention of the testator. We are not without authority to shew that this case should be settled by auditors. In Levan’s Adm. v. Frey, 2 Yeates, 320, the action was debt, on an obligation, dated 9th January, 1779, conditioned for the payment of eighty pounds, on the 10th of January, 1780. The plaintiff offered to prove, that the bond was given in lieu of another bond between the same parties, for a debt contracted long before the revolutionary war. Held, that the case was proper for auditors, and not for a jury ; and the Court declared, that if the plaintiff made out his case before auditors, he would be entitled to recover eighty pounds in specie, and interest. But what come home to the.póint, are the cases of Joseph, John, Thomas, James, and Benjamin Grubb, against these very executors, for legacies bequeathed by this same will, reported in 1 Teates, 193. These five suits were referred to auditors who reported in favour of the plaintiffs, fixing the value of' the legacies equal to specie. I am therefore of opinion, that it was going too far, for the Court below to say peremptorily, that the plaintiffs were entitled to recover the nominal amount of the legacy, in the present current money of the country. It would have been more proper, to refer the case to auditors, after the precedent in Levan’s Adm. v. Frey.
3. But the third part remains for consideration. The defendant’s counsel contends, that the proceedings in the Orphans’ Court, and in the Supreme Court, on the appeal, are conclusive evidence of the payment of this legacy. If so, there is an end' of the plaintiffs’ action. Let us examine those proceedings then. As to the payment of four hundred dollars into the Orphans’ Court, on the 6th of March, 1781, in satisfaction of the legacy bequeathed to Jane Grubb, it was, as a judicial proceeding, a mere nullity. The legacy was not due, Jane being under the age of eighteen ; and if it had been due, it should have been paid to herself. There was no suit depending in the Orphans’ Court, no account settled. And the reason assigned for the payment, was a *31 very bad one. For, granting that the depreciated paper had really been received, in payment of a debt due to the testator, it was uniust to throw the wholé loss oh the child, for the .benefit of George McCullough, to whose wife the residue of the personal estate was devised,, after payment of debts and legacies. Without doubt, the Orphans’ Court travelled out of its jurisdiction, in receiving this deposit on account of the infant, and this the counsel for the ■ plaintiffs concedes. But he relies on the subsequent settlement of the administration account, confirmed, as he supposes, so far as concerned the payment of this legacy, on an appeal to this Court. It is unnecessary to consider the general effect, of settlements in the Orphans’ Court. We are now on the subject of a legacy, and the question is, whether a legatee is concluded by a settlement to which he is no-party, in which the executor is credited for the payment of the legacy. I'have never heard of proceedings in the Orphans’ Court, to .compel payment of a legacy. There is no Act of Assembly authorising a suit of that kind, but there is an Act made expressly for the purpose of enabling legatees to sue for arid recover their legacies in the Court of Common Pleas; which is a pretty strong indication "of the sensé of the Legislature, that the subject was not within the jurisdiction of the Orphans’ Court. Now it would be most extraordinary indeed, if the Courts to whom jurisdiction in matters of legacy is assigned by .positive law, should be concluded by an account settled ip another Court, which did not possess that jurisdiction. Granting that a decree of the Orphans’ Court would be at least prima facie evidence of all receipts and disbursements, on account of debts due to and from the testator’s estate, funeral expenses, &c. (whether it would be conclusive against the legatee, as to these matters I give no opinion,) and supposing, for argument’s sake., that it would be prima facie evidence of the payment of the legacy, upon which also I express no opinion, yet it is Very certain, that it cannot be conclusive evidence of payment. As to the appeal to the Supreme Court, even if they had decided on the subject of the legacy, it would not have been conclusive, because the decision would have been made by them as a Court of Appeal, and therefore, not binding when they came to try the issue of. payment in a suit at common' law, for the recovery of the legacy; the judgment on the appeal, *32 must partake of the nature of the judgment appealed from. Therefore. if the Orphans’ Court could not make a conclus've decree, on the subject of payment of a legacy, neither would the decree of the Supreme Court be conclusive, when made on the same subject, in their appellate capacity. But the truth is, that the Supreme Court never made any decision on the subject of the legacy : the record shews, “ that they reversed the decree of the" Orphans’ Court, as to the sum of eighty seven pounds, ten shillings, directed to be charged against the accountants, and ordered that the accountants should be credited with that sum,”; and nothing more appears. Neither does it appear, that Jane Grubb was a party to the proceedings, either in the Orphans’ Court, or in this Court. I am clearly of opinion, therefore, that the President of the Court below was right, in charging the jury, that these proceedings were not conclusive evidence of the payment of the legacy in question. On the whole, I am for reversing the judgment, and ordering another trial.
Judgment reversed, and a venire de novo awarded.