## Summerville *against* Holliday.

The presumption of law that a debt has been paid, or a right of way has been granted, or a bond or mortgage or legacy has been satisfied, are those deductions from the existence of a fact, to which a legal effect is attached beyond their nature and operation. They are either conclusive, and may be made by the court, or inconclusive and can only be found by a jury. It is not so much a presumption that the money has been paid, or a right of way granted, as it is the substitution of an artificial rule in the place of evidence or belief, after a delay which may have been destructive of the evidence on which a belief might be justly founded.

Where a presumption of payment from the lapse of time is not repelled by circumstances accounting for the delay, it is the duty of the court to instruct the jury that they are bound by the legal presumption ; but where there is some circumstance given in evidence to account for the delay, it is the duty of the court to refer to the jury, as an open question of fact, to determine as to actual payment.

ERROR to the common pleas of *Huntingdon* county.

This was an action of debt for a legacy, by *Ruth Summerville* for the use of *Thomas Jackson*, against *Robert Wallace, administrator de bonis non* with the will annexed of *William Holliday* deceased, with notice to *William Holliday* (the third), devisee of *William Holliday* (the second), who was the devisee of *William Holliday* (the second), and *terre tenant.* The pleas of defendants were *nil debet* and *payment with leave, &c.*

The plaintiff to support the issue on his part, gave the following evidence.

11th July 1796. Will of *William Holliday* (the first), proved 30th September 1796, by which the testator wills,

1. That his debts be discharged.

2. That his wife shall have the tract of land he lives on during his life.

3. That his son *John* shall have the tract of land he (*John*) now lives on, containing about three hundred acres.

4. " It is my will that my son *William* shall have the tract of land he now lives on, containing about three hundred acres, provided he pays to my other three children, viz. *John, Ruth* and *Mary*, the sum of 300 pounds, to be paid in the following manner—100 pounds to be paid in one year after my decease, and 200 pounds to be paid one year after, deducting the sum of 24 pounds 5 shillings, which I now owe him out of said 300 pounds."

5. That his daughters *Ruth* and *Mary* shall have each half of the tract of land he then lived on.

29th June 1819. Will of *William Holliday* (the second), proved 10th November 1819, by which the testator wills,

1. That all his debts and funeral expenses be paid.

2. " I give and bequeath to my son *William Holliday*, and to his

[Summerville v. Holliday.]

heirs and assigns for ever, the tract of land on which I now live, as bequeathed to me by my father *William Holliday,* supposed to contain three hundred acres, or thereabouts, subject to the paying of my debts, and the following legacies and payments of money, to wit,

3. " To my daughter *Polly,* now married to *James Laverty,* 200 dollars.

4. " To my daughter *Jane,* married to *C. Denlinger,* 200 dollars.

5. " To my daughter *Ann,* married to *Daniel O'Lery,* 200 dollars.

6. " To my daughter *Dorcas Holliday,* 200 dollars, &c.

" My son *William Holliday* is to have the remainder of my personal or mixed estate.

" I wish my executors to rent the lands that *Daniel O'Lery* and *James Laverty* now live on, supposed to be fifty acres. Two-thirds of the rent to be paid yearly, to my two daughters *Polly Laverty* and *Ann O'Lery,* until 100 dollars is paid to each of them ; and one-third of the rent of the aforesaid lands to be retained by my executors, to assist in defraying the cost that may accrue on the ejectment brought against me by *James Summerville,* in right of *Ruth Summerville* and others, and the action now pending between myself and those claiming under *Henry Baugher.*" His son *William* not to pay any money, except the 200 dollars to his daughters *Polly* and *Ann,* until all the said lawsuits are finally ended, and then, if any of the land lost, the said legacies to abate in proportion.

His son *William* and *Joseph M'Cune* appointed executors.

Record read in case of *James Summerville* and *Ruth* his wife v. *William Holliday.* No. 53 of August term 1800, in common pleas of Huntingdon county. Summons debt 100 pounds. Narr. filed for Mrs *Ruth Summerville's* part of the 300 pounds mentioned in the will of *William Holliday,* the first.

17th January 1804. This cause by consent of parties referred to *Benjamin Elliott,* Esq., *David Stewart* Esq., *Alexander M'Connell,* Esq., *James Kerr,* Esq., and *Lazarus Lowery.*

24th January 1805. *Benjamin Elliott, Alexander M'Connell* and *David Stewart,* three of the said referees, report as follows :

" The subscribers, three of the auditors or referees appointed to settle the above cause, met in Hollidaysburg on the 22d of January 1805, at the house of *Samuel Galbraith,* and the parties attended before us. And after examining the cause at some length, we are of opinion, that were we to make a final decision at present, injustice would be done to the parties, as ejectments are now pending for considerable parts of the land, which is the ground of controversy between the parties. We, therefore, agree that no determination can be made until a decision is had in the case of *Lessee of Drinker* v. *William Holliday,* and the *Lessee of E. Nicholas and I. Nicholas* v. *William Holliday,* now pending in the supreme court of Pennsylvania, and to be determined in the circuit court of Huntingdon county."

12th March 1832. Jury sworn, and verdict for defendant.

10th May 1832. Writ of error filed for plaintiff.

[Summerville v. Holliday.]

18th June 1832. Judgment of common pleas reversed by supreme court.

8th Jauuary 1831. Deed of *William Holliday* (the third) to *Thomas Jackson*, for sixty acres and ninety perches, for the purpose, and by which the long contested dispute and suits between the *Nicholas* title and the *Holliday* title, so far as the *Nicholas* claim interfered with *William Holliday's* tract, was compromised and finally settled.

13th April 1830. Deed of *James Summerville* and *Ruth* his wife to *Thomas Jackson*, assigning legacy now claimed, and the said grantors' interest in the tract of land devised by *William Holliday* (the first) to the said *William Holliday's* (the first) daughters, *Ruth* and *Mary*.

Record read in case of *Lessee of Henry Drinker* v. *William Holliday* and *Sigh Clossin*. Brought in circuit court for Huntingdon county to December term 1802. Ejectment for land in Frankstown township (part of the land devised by *William Holliday*, the first, to *William Holliday*, the second). Removed to common pleas docket, No. 71 of November term 1809.

22d June 1810. A jury sworn, and verdict for defendants, and judgment. October 1811, at supreme court, writ of errror struck off, having issued irregularly.

The defendant, to support the issue on his part, offered in evidence as follows, to wit:

Record in case of *Joseph Nicholas* v. *John Holliday, Mary Holliday* and *John Martin*, of September term 1792. Ejectment.

May term 1801. Jury sworn, and verdict for plaintiff, and judgment.

*Habere facias possessionem* and *fieri facias* to September term 1801, returned Not served. *Alias habere facias* and *fieri facias* to September term 1802. *Pluries habere facias* and *fieri facias* to September term 1806, No. 5 (*prout* said record), offered by defendant, with the offer to follow this up with evidence to show that *William Holliday* (the second) and *William Holliday* (the third) were turned out of possession under this ejectment and other ejectments which will be shown.

This evidence was objected to by the plaintiff, and the court said they would receive the evidence on this principle : that so far as the defendant and his ancestor were out of possession by adverse title, the interest accruing on the legacy might be suspended ; and that this opinion was given as well on principle as on the act of the parties, as now in evidence, by the plaintiff's stopping the former suit for the legacy until these and other ejectments should be determined.

To this opinion of the court the counsel for plaintiff excepted.

The record of the last said ejectment was then read by defendant.

*John Patton*, Esq. a witness for defendant sworn, says—" When I was sheriff, I had a writ of *habere facias possessionem* (in this last mentioned ejectment). Began on the northerly side of the tract,

or the claim of *Nicholas*.   Ran to            , came to the river, then ran across near to old *John Holliday's* improvement ; left old *John's* mansion house outside of the line—*John* then lived where the old man lived ; then went to the division line between the *Halding* and *M'Kinly* tracts.   *William Holliday* said that was his land.   I stopped and they sent for *Sigh Clossin* and agreed to leave it to his oath, who he was a tenant under.   *Sigh Clossin* proved on oath he was tenant under *William Holliday*, and we then went no further.   I gave possession of no land then, within the bounds of the *M'Kinly* tract.   I did not deliver possession of a yard then claimed by *William Holliday*.   The recovery was only against *John Holliday*."

Defendant also offered record in the case of *Lessee of William Holliday* v. *Henry Baugher*.   No. 56 January term 1803, in C. P.   Ejectment for fifty acres of arable land and fifty acres of woodland, (this the suit settled by the deed read heretofore of the 8th of April 1831, *William Holliday* to *Thomas Jackson*) removed to circuit court to March term 1803.

Referred.   Brought back to common pleas, No. 80, November term 1809, continued to January term 1814, and jury sworn and verdict and judgment for plaintiff.   Writ of error and judgment reversed the 18th of March 1816.   25th of September 1821, jury sworn and discharged for sickness of a juror.   Continued to the 20th of September 1826, and then removed to circuit court to December term 1826.   Referred, and, the 8th of May 1828, arbitrators chosen. Continued to March term 1829, which last said record was objected to by the plaintiff's counsel, and admitted by the court, who say—This suit or record is admitted on the principle the court before decided respecting the abatement of the interest.

To the admission thereof and opinion of the court, the counsel for the plaintiff excepted.

*Burnside*, President, thus charged the jury.

The first point made by the defendant is, " that the legacy for which this suit was brought was due in 1798 ; that the present suit was not brought until August term 1832.   The presumption of law is that the legacy has been paid or released, and the plaintiff can not recover."

This court agree, and so direct the jury, that from the lapse of time the presumption is that this legacy is paid, unless there are such circumstances given in evidence which will repel that presumption, and of which the court will speak hereafter.   The rule is well settled and obtains as to bonds, mortgages and judgments.   All these claims will be presumed to be paid after twenty years.   But in cases of bonds, judgments and mortgages, when the debt has been due twenty years, there is a presumption of payment.   This presumption, like all other presumptions, may be removed by proof of the acknowledgement of the debt, payment of interest, and many other circumstances.   The same principle has been extended to ad-

ministration bonds, and I see no reason why it should not apply to a legacy.

We think it does, and so instruct you, and on this point your verdict should be for the defendant, unless there are such circumstances given in evidence that will repel that presumption.

We shall proceed to consider those circumstances. A suit was brought for this legacy in 1800, about four years after the death of *William Holliday* the elder. It is referred in 1804. A report was made in 1805, that the auditors could not make a final decision, as the cases of *Drinker* v. *Holliday* and *Nicholas* v. *Holliday* were pending and undetermined; from the records in evidence, the *Nicholas* suit, or rather the *Baugher* suit against *William Holliday*, was not ended till 1815; the *Drinker* suit in 1796. The *Nicholas's* had recovered in 1801 against *John Holliday*, *Mary Holliday* and *Martin*, and issued their *habere facias*. *William Holliday* (the second) alleged they had got possession of land which belonged to him, and he brought his ejectment in 1803. This suit was tried—verdict for plaintiff, and set aside in the supreme court. This suit, and all the others undetermined, were settled by Mr *Jackson*, and settled with *William Holliday* by the deed of the 8th of January 1831. The evidence of *Adams*, we think, on this point, *weighs* little, because more than twenty years elapsed from that conversation to the bringing of the action; the will of *William Holliday*, the second, is also relied on.

Do all these circumstances satisfy you and repel the presumption of payment which the law raises? Are the facts first stated inconsistent with this presumption? We shall now refer you to the case of *M'Culloch executor of M'Culloch* v. *Montgomery and wife*. [The court read that case.] On the authority of this case and the pendency and proceedings in the case of *Summerville and wife* v. *Holliday* for the same legacy, the construction of *William Holliday's* will, the pendency of the several ejectments, the records which have been read, the plaintiff's counsel contend we should instruct you it is rebutted and repudiated in point of law. This instruction we do not give. We leave it to you to determine upon this evidence, whether the usual presumption arising from length of time is not rebutted by the circumstances of these ejectments—the suit for the legacy, the report of the auditors, and all the other facts proved in the case.

2. The defendant further requests us to instruct you, " that the circumstances given in evidence in this suit do not rebut the presumption of law, that this legacy is satisfied and paid."

3. And further, " that where there are a variety of circumstances given in evidence to rebut the presumption of payment, it is a matter of fact, which the jury must decide, whether the circumstances given in evidence do rebut the presumption or not."

These points are already fully answered. We do not instruct you as requested on point No. 2. We leave it to you to determine whether the circumstances rebut the presumption. The last point is answer-

[Summerville v. Holliday.]

ed. We have left it to you whether the circumstances given in evidence rebut the presumption.

4. We are further requested to state to you, " that *Thomas Jackson*, the real plaintiff in this suit, cannot recover the legacy for which this suit was brought, as he has accepted a deed from *William Holliday*, the present defendant, for part of the land out of which this legacy is to be paid, and has accepted a warrant against all claims under the will of *William Holliday*, the elder."

We do not instruct you as required, we direct you that the acceptance of a deed for a part of the land out of which this legacy is to be paid, nor the warranty against all claims under the will of *William Holliday*, will not prevent a recovery.

If you find for the plaintiff, the next inquiry will be how much ? We instruct you that only one-third of the legacy can be recovered, that from this in the first instance the one-third of the 24 pounds 5 shillings is to be deducted with one year's interest thereon, that is, 8 pounds 1 shilling and 6 2-3 pence is to be deducted.

We further instruct you that so far as the defendant or his ancestor was out of possession of the premises devised, you may deduct interest *pro rato* for that amount and for that time ; and if you are satisfied that the evidence given by the plaintiff repels the presumption from lapse of time, after making these deductions, you will find the balance for the plaintiff.

Errors assigned.

1. That the court below erred in receiving the testimony offered by defendant, mentioned in the first bill of exceptions, for the purpose therein mentioned.

2. That the court erred in receiving the testimony offered by defendant, mentioned in the plaintiff's second bill of exceptions, for the purpose therein mentioned.

3. That the court below erred *in refusing to instruct the jury*, as requested and contended for by the plaintiff below and plaintiff in error, " that the pendency and proceedings of the case of *Summerville and wife* v. *Holliday*, for this same legacy, (the record of which was given in evidence by plaintiff) the construction of *William Holliday's*, the pendency of the several ejectments the records of which have been read in this case, rebutted and repudiated, *in point of law*, any presumption of payment which the law raises from the lapse of twenty years from the time this legacy became payable, until this suit was brought for recovery of the same," and in leaving the effect of the same in point of law to be determined by the jury.

4. That the court below erred in their answers to the *first, second* and *third* points of the defendants below.

5. That the court erred in charging the jury ; that only one-third of the legacy (of 300 pounds) could be recovered by the plaintiffs in this case, subject to a deduction of one-third of 24 pounds 5 shillings.

6. That the court erred in instructing the jury, that so far as *William Holliday* (the third) or his ancestor, were out of possession

of the premises devised, they might deduct interest on the legacy *pro rata,* for that amount and for that time.

7. That the court below erred in saying, that the presumption of law of the payment of money, after the lapse of twenty years from the time it became payable, applies to the case of a legacy, unless rebutted.

*Bell* and *Potter,* for plaintiff in error, cited, 7 *Serg. & Rawle* 17; 4 *Cranch* 420; 5 *Johns. Rep.* 417; 14 *Serg. & Rawle* 22; 10 *Johns. Rep.* 417; 3 *Binn.* 337; 1 *Johns. Chan.* 316; 1 *Coxe* 535; 2 *Ves.* 43; 1 *P. Wms* 742; 3 *P. Wms* 287.

*Miles,* contra, cited, 1 *Penns. Rep.* 419, 148; 14 *Serg. & Rawle* 19; 17 *Serg. & Rawle* 353; 13 *Serg. & Rawle* 124.

The opinion of the Court was delivered by

Ross, J.—In this case seven errors have been assigned. I shall however confine myself to an examination of those three alleged to be in the charge of the court, as they only seem to be of any importance.

The third, fourth, and seventh errors, embracing in effect the same questions, will be considered together. It was contended in the court below that the legacy for which the suit was brought, having become due in 1798, and the present suit not having been instituted until August term 1832, the presumption of law was that the legacy had been paid or released; and consequently that no recovery could be had by the plaintiff. The court in this charge instructed the jury, that from the lapse of time, the presumption was that the legacy had been paid, unless there were such circumstances given in evidence, which would repel that presumption. In this opinion, there certainly was no error. After a lapse of twenty years, without any demand being made, or any measures taken to collect, or any thing paid on account thereof, a legacy will be presumed to have been paid; and a court should so instruct the jury, unless the laches or delay should be accounted for in some manner consistently with the existence of the legacy—or in other words, unless there be evidence sufficient to repel the presumption of law. There is no statutory provision limiting the time within which a legacy shall be demanded or sued for; or within what time it shall be barred or presumed to have been paid. It rests, however upon the same principles, which govern the cases of bonds, mortgages and judgments; and there surely is nothing in the nature or character of the demand, which should exempt it from the same rule of decision. The rule respecting the presumption of payment from the lapse of time is in the nature of the statute of limitations, and is derived by analogy from the English statute concerning writs of entry into lands. In the case of *Arden* v. *Arden,* 1 *Johns. Ch. Rep.* 316, it is said, "there is no legal bar by force of the statute of limitations to a legacy. It cannot be pleaded; but still the court, justly averse to giving counte-

3 P

[Summerville v. Holliday.]

nance to any stale demands, adopts the provisions of the statute as a guide in the exercise of its discretion." In *Durdon* v. *Gaskill*, 2 *Yeates* 368, it was held, that after a length of time, payment of a legacy would be presumed; though such presumption might be rebutted by other circumstances. And it is also clear from the decisions in the cases of *Parker* v. *Ash*, 1 *Vern.* 256, and *Higgins* v. *Crawford*, 2 *Ves. Jun.* 571, that length of time will raise a presumption of a legacy having been paid; and that such presumption, unless repelled by evidence of particular circumstances, will be conclusive. The case of *Kane* v. *Bloodgood*, 7 *Johns. Ch. Rep.* 90, which overrules the case of *Decouche* v. *Savetier* in 3 *Johns.* 190, may also be referred to as an authority. In that case, it is said, that since a remedy at law is given by statute to recover legacies or distributive shares, the statute of limitations would be a bar to a suit for a legacy in equity, as well as at law. In *Cope* v. *Humphreys*, 14 *Serg. & Rawle* 20, Justice *Duncan* says, " that twenty years is the fixed limitation as to *all debts*, with the exception of trusts, which depend on other principles." And I may add, that only such trusts as are not at all cognizable at law would be embraced within the exception. A legacy is not such a trust; and there can be no doubt therefore of its being barred by lapse of time. The rule presuming the payment of debts is founded upon policy and the welfare and safety of the party. The law will not encourage the laches of a plaintiff, but will interpose a shield to protect the defendant against stale demands, after the lapse of twenty years. If it will protect him from the payment of a judgment after the lapse of twenty years, I can see no reason, as I have already said, why a legacy should not also be presumed paid after a lapse of twenty years from the time it became due, in the absence of any proof to rebut the presumption of payment. See *Laussat's Edit.* of *Fonblanque's Equity* 330.

The presumption of law that a debt has been paid, or a right of way has been granted, or a bond, a mortgage or legacy satisfied, are those deductions from the existence of a fact, to which a legal effect is attached beyond their nature and operation. They are either conclusive, and may be made by the court; or they are inconclusive, and can only be found by a jury. 2 *Saund. Rep.* 728, 175; 4 *Burr.* 2225; *Stark. Ev.* 1240, 1245. Hence I conclude, that it is not so much a presumption that the money has been paid, or a right of way granted, as it is the *substitution of an artificial rule* in the place of evidence and belief, after a delay which may have been destructive of the evidence on which a belief might be justly founded.

It has been further contended, that the rebutting evidence which was given in this case upon the trial was sufficient to repel any presumption of law arising from the lapse of time ; and that the court below should have so instructed the jury. Proof rebutting the presumption may be derived from a single fact, or it may consist of a variety of circumstances connected with the situation of the parties, or the subject matter under consideration. Where the presump-

[Summerville v. Holliday.]

tion from the lapse of time is not repelled by some circumstances accounting for the delay, it is the duty of the court to instruct the jury, that they are bound by the presumption of law; but where there is some circumstance offered in evidence to account for the delay, it is then the duty of the court to refer it to the jury, as an open question of fact, to determine as to actual payment. These principles were fully recognized in the case of *Cope* v. *Humphreys,* already cited. See also *Phillips's Evid.* 115, 117.

If any of the circumstances which were given in evidence accounted for the delay, it was proper that they should be left to the jury. 4 *Cranch* 420. The case of *M'Culloch* v. *Montgomery,* 7 *Serg. & Rawle,* has been much relied on in this case by the counsel for the plaintiff. This question, however, was not raised in that case. It was not before the court for adjudication; and therefore the expression used by Chief Justice *Tilghman, seeming* to admit the right of the court to instruct the jury, that the circumstances proved are sufficient to repel the presumption of payment, is not to be received with that authority for which the counsel contend. This court is only governed by the decision actually made in any case, upon the errors assigned. We are not responsible for the language used, or the reasoning adopted by the judge who delivers the opinion; but simply for the points as argued and decided. The case, therefore, of *M'Culloch* v. *Montgomery* we do not think is decisive of the question. It is true, the court might have given their opinion on the nature and sufficiency of the evidence to repel the presumption; but they were not bound to do so, and neither would the jury have been bound by such opinion. The repelling evidence consisted of a great variety of facts and circumstances, which it was the province of the jury to decide, and to draw such inference from, as would seem to them correct; and therefore I think the court below was justified in submitting the question to the jury, whether or not the evidence offered was sufficient to repel the presumption of payment, after the lapse of twenty years.

As I have before remarked, the court think the other errors have not been sustained, and therefore we direct the judgment to be affirmed.

KENNEDY, J.—Entertaining great respect for the opinion of the majority of this court, and believing that the peace and welfare of the community may depend in some measure upon the degree of confidence with which the decisions of the court of dernier resort in the state may be received, and that that confidence may be increased by the unanimity attending those decisions as well as by the reasons advanced in support of them; it is with unfeigned reluctance, as well as diffidence, that I have ventured upon this occasion to express my dissent. Indeed, nothing could have prompted me to it, but a firm and settled conviction that the decision of the court, in this case, goes to determine, what I consider to be most clearly a

mixed question of law and fact ; to be a question exclusively for the jury to decide according to their discretion, without any *legal advice* or *direction* from the court in regard to it.

Mr *Starkie*, in his Treatise on Evidence, part 4, pages 1235 and 1236, in speaking of presumptions and their several natures, says, that which arises from the lapse of a *defined* space of time, is always in its nature *artificial*, and not *natural ;* for evidence, when left to its own natural weight, is not confined within arbitrary and artificial boundaries ; thus, at the expiration of twenty years, without payment of interest on a bond, or other acknowledgement of its existence, satisfaction is to be presumed ; but if a single day less than twenty years has elapsed, the presumption of payment, from mere lapse of time, does not arise.    It is then obviously an *artificial* and *arbitrary* distinction ; for no man's mind is so constructed, that the mere lapse of the single day, which completes the twenty years, would absolutely generate in it a conviction of belief, that the debt had been satisfied.    So far, then, as it is artificial and arbitrary, it is a presumption purely of *law*, because it is established by the law, and from this source it derives all its force and artificial operation and effect, beyond its mere natural tendency to produce a similar effect.    This presumption being the creature of the law, it necessarily follows, that it is for the court to say to the jury, on a given state of facts, whether they ought to draw the inference, or to raise the presumption in favour of payment, or not.

And although I admit, that it is the province of the jury to draw or make every presumption of a mixed character, that is, of *law and fact*, as contradistinguished from one merely of *law*, with which the jury have nothing whatever to do, but belongs exclusively to the court ; *Stark. Ev. part 4, page* 1243 ; yet, in making presumptions of *law* and *fact*, the jury are required to be *advised* and *directed by the court ;* as in the case of an incorporeal hereditament, after an adverse enjoyment of it for the space of twenty years *unanswered*, the court, if requested, is bound to instruct the jury that they ought to presume a grant in favour of the party so enjoying ; but if it were to appear from the evidence, that such hereditament, although enjoyed adversely for the twenty years, yet that the right to such enjoyment had been contested during the whole of that time, it would be the duty of the court to direct the jury that no such presumption could be made by them ; *Ibid.* 1243, 1244.    In *Stœver* v. *Whitman*, 6 *Binn.* 419, it is laid down that *what* circumstances will justify the presumption of a deed or grant is matter of *law*, and that it is the duty of the court to give their opinion, whether the facts, if proved, will justify the presumption.    Miserable, indeed, would be the state of society, if it were not a question of law to be decided by the court. Great insecurity and uncertainty would necessarily attend the titles to property, especially that of an incorporeal nature, to which the statute of limitations is not applicable.    Legal advice, such as might be relied on, could never be given or obtained ; for the question must

[Summerville v. Holliday.]

be referred to the decision of a jury ; to be determined by their feelings, prejudices, or prepossessions, without any legal instruction from the court, and the presumption made, or not made, accordingly as they shall happen to be moved towards the parties litigant. Hence, being to be decided not by any fixed rule or principle of law, but at most by some rude and undigested notions of right and wrong, or ill founded prejudices, if not hatred against one party, or good feeling and affection, from long acquaintance, in favour of the other ; or sympathies produced by the circumstances attending the case ; in short, by the influence of all those impulses to which the infirmity, and possibly the depravity of human nature are subject : it would be utterly impossible, even for the most experienced and distinguished of the profession, to give any advice, or to foretell what may be the result, where every thing must be decided by the jury, without legal, advice and direction from the court.

If we refer to the origin of the rule on this subject, and the authorities under which it has been established, we will see that it is founded rather upon *acquiescence* than delay, and that the courts have uniformly instructed juries, under what circumstances it ought to be allowed.

The doctrine that bonds of many years standing should be presumed to be paid, where the obligees had suffered them to lie dormant, was first established in courts of equity, by their administering relief to the obligors who were sued on them at law. In *Coles* v. *Emerson*, and *Carpenter* v. *Tucker*, 1 *Chan. Rep.* 78, as early as 10 *Car.* 1, 1635, the court of chancery decreed the bonds upon which the complainants in these cases respectively were sued at law, to be delivered up to be cancelled, upon the ground that they must be considered satisfied, inasmuch as twenty-two years had elapsed without any *demand* having been made or *interest* paid thereon. And in *Geofrey* v. *Thorn, Ibid.* 88, similar relief was granted for the same reason. See also, *Powell* v. *Godsale, Finch* 77, and *Moyle* v. *Lord Roberts, Nels.* 9, where the court interposed upon the same ground and gave the like relief. It does not appear, however, that any definite period of time was fixed upon in those early cases, as being sufficient, where the creditor had lain by without making a *demand*, to raise the presumption of payment. But after this, Lord *Hale* appears to have been the first who introduced the principle into the courts of common law, and laid down the rule, that a lapse of twenty years without any *demand* made, or none appearing in the case, was sufficient to raise the presumption of payment. 1 *Term Rep.* 271 ; 19 *Ves.* 196, 197 ; *Matthews on Pres. Ev.* 379. In this he was followed by Lord *Holt*, who, in 1702, held, that "where a bond for payment of money has *lain dormant* twenty years, if, in an action brought thereon, the defendant pleads *solvit ad diem*, the plea will be good; for it is a strong presumption the bond has been satisfied, where there has been *no demand* made, nor *action brought thereon* in so long a time." *Anon. Case,* 11 *Mod.* 2. And in *Hothershill* v.

[Summerville v. Holliday.]

*Bows,* 6 *Mod.* 22, in the next year, he laid it down, that "if a bond be of twenty years standing and *no demand proved thereon,* or *good cause of so long forbearance shown* upon *solvit ad diem,* he should intend it paid." Afterwards it was recognized in *Moreland* v. *Bennitt,* 1 *Stran.* 652, and in *Searle* v. Lord *Barrington,* 2 *Stran.* 826, *S. C.* 2 *Lord Raym.* 1371. And again, in *Humphreys* v. *Humphreys,* 3 *P. Wms* 396, 397. In 1740, in *Gratwick* v. *Simpson,* 2 *Atk.* 144, it is reported, that "the *judges have laid it down* now as an invariable rule, that if there be *no demand* for money due upon a bond for twenty years, that *they* will *direct* a jury to find it satisfied from the presumption arising from the length of time." Likewise, in *Lemon* v. *Newnham,* 1 *Ves.* 51, the rule is laid down in the following terms, "where *no demand* of principal or interest is made for twenty years, satisfaction will be presumed." And in *Trash* v. *White,* 3 *Bro. Ch. Rep.* 291, Lord *Thurlow* lays it down, that there must not only be nonpayment of interest during the twenty years, to raise the presumption of payment of the principal, but *no demand.* So in the *Winchelsea* causes, 4 *Burr.* 1963, the court say, "bonds which have *lain dormant,* shall be *supposed* to be satisfied, after twenty years." And twenty years *without a demand* being made, was clearly Mr Justice *Buller's* understanding of the rule, as appears from what he has said in *Oswald* v. *Legh,* 1 *Term Rep.* 271.

Now, these authorities all prove most abundantly, that a *voluntary forbearance* or *acquiescence* on the part of the creditor or obligee, is the very *reason* and foundation of the rule ; but where there has been a *demand* or a *suit* commenced, no matter whether in proper form or not, so that it be for the same debt, within the twenty years, *acquiescence* is excluded and no presumption arises. But even a demand or suit is not necessary to prevent the rule taking place, where, from the poverty of the debtor, they would prove fruitless. Nor will the presumption arise, where the debtor has been absent and out of the reach of the creditor, or where the creditor himself has been abroad, and from this circumstance no opportunity afforded the debtor of making payment. In *Hillary* v. *Walker,* 12 *Ves.* 266, Lord Chancellor *Erskine,* in speaking of a bond, says, "upon twenty years, the presumption is, that it has been paid ; and the presumption will hold unless it can be repelled ; unless insolvency or a state approaching it can be shown; or that the party was a near relation, or the absence of the party having a right to the money, or something which repels the presumption, that a man is *always ready to receive his own.*" Lord *Eldon,* also, in *Fladong* v. *Winter,* 19 *Ves.* 200, after recognizing the rule, says, "it may be met by evidence to satisfy a jury that the debtor *had not the opportunity* or the *means* of paying." And the case of *Wynne* v. *Waring,* is mentioned there as having been decided on this latter ground, and that the presumption did not arise, although more than fifty years had passed. So in *The Mayor of Hull* v. *Horner, Cowp.* 109, it is said "there is a time when a jury may presume the debt paid, &c., but if a witness is

[Summerville v. Holliday.]

produced to prove the contrary, as by showing the party not to have been *in circumstances to pay*, or a recent acknowledgement of the debt, the jury *must* say that the debt is not paid." And the opinion of Lord *Ellenborough*, as expressed at *Nisi Prius*, in *Willaume* v. *Gorges*, 1 *Camp.* 217, which seems to contravene these cases so far as *poverty* is made a sufficient excuse for not prosecuting a suit against the debtor, may well be questioned as to its correctness. But in *Newman* v. *Newman*, 1 *Stark. N. P.* 81, this distinguished judge held, that the residence of the defendant in America, prevented the presumption from arising, and most positively directed the jury to this effect, by saying " there was *no ground* for the presumption." As he also directed them in the immediately preceding case with the same degree of positiveness, " that under the circumstances, the inference to be drawn from lapse of time was *not rebutted*, and *directed* the jury to presume that the judgment *had been discharged* by being paid off or released." Thus exercising, as it appears to me, not only an authority which belongs to the court, but discharging a duty which it is bound to perform, by instructing and directing the jury as to the sufficiency of the circumstances attending the lapse of the twenty years to rebut the presumption.

Whether the presumption arises or not, does not then depend upon mere lapse of time, but upon *acquiescence* and other circumstances connected with it ; as, for instance, in the case of the enjoyment of an incorporeal right for a space of twenty years, that alone is not sufficient; it must have been *adverse, exclusive* and *uninterrupted*, or *acquiesced* in, otherwise the presumption of a grant can not be made. *Strictler* v. *Todd*, 10 *Serg. & Rawle* 68, 69. So in the case of a bond, as appears from the cases and authorities referred to, it must have *lain dormant* without any *demand* made, or *suit* brought, or *interest* paid thereon, or *acknowledgement* of the debt, or *absence* of the party from the country, or *inability* to pay during the period of the twenty years; otherwise the presumption of satisfaction does not arise and the court ought so to instruct and direct the jury. I consider the late Chief Justice as fully supporting this doctrine in *Miller* v. *Beates*, 3 *Serg. & Rawle* 493, when he says, " there is no positive law fixing a presumption of the payment of a bond, and yet if the interest has remained unpaid for twenty years, and there is *no circumstance* accounting for this long cessation of payment, there arises so strong a presumption of the satisfaction of the debt, that the jury not only may, but *ought* to presume it, and unless they do the *court would order a new trial*." And again in *Kingston* v. *Lesley*, 10 *Serg. & Rawle* 389, he says, " where the facts are plain, the judge may with great propriety tell the jury either that they *ought* or *ought not* to make the presumption." And the present Chief Justice lays it down in *Henderson* v. *Lewis*, that " the presumption is not *subject* to the *discretion of the jury*," which is adopted by the late Mr Justice *Duncan*, in *Cope* v. *Humphreys*, 14 *Serg. & Rawle* 21, and is considered by him a presumption of *law*, of which the court must charge the jury ;

[Summerville v. Holliday.]

and that to avoid it when requested, would be error. Beside, in this last case, page 22, the very question, whether the circumstances given in evidence were sufficient or not to prevent the presumption from arising, was discussed and decided on by this court as one of *law*: and the court say the only circumstance of the kind pointed out was, that one of the conusors of the judgment had been defaulted on two *nihils* returned, as to the effect of which in preventing the presumption from arising in favour of the administrators of the conusors who had pleaded to issue, the court below was not requested to give any opinion, but if they had, "*it should have been an opinion* directly against the plaintiff." I also consider the case of *M'Dowell* v. *M'Cullough,* 17 *Serg. & Rawle* 51, as establishing fully all that I contend for—which is, that it must be left to the jury to judge of the *weight*, that is, the *credibility* of the evidence tending to prove the facts or circumstances, relied on by the plaintiff, to rebut the presumption and to account for the delay consistently with non payment of the debt, and to determine whether they have been proved or not; but whether, when found by the jury to exist, they are sufficient in law to rebut the presumption of satisfaction arising from lapse of time, is a question upon which it is the duty of the court, if requested by either party, to give their opinion and instruct the jury. The court of common pleas, in that case, were, among other things, requested by the defendant to instruct the jury, " that the conversations detailed in evidence, if believed by the jury, do amount to such an acknowledgement by the party as the *law requires* to destroy the legal presumption;" upon which the court told the jury, " that they would not say that the conversations detailed in evidence, if believed by the jury, did not amount to such acknowledgement by the party as the law requires to destroy the legal presumption. That that depended upon the *weight* of evidence, of which they were the exclusive judges. That in the *opinion of the court,* whose opinion on facts is not binding on this jury, the conversations detailed in evidence *do amount to such acknowledgement* by the defendant as the *law requires,* to destroy the legal presumption of payment of the single bill." Now although this direction of the common pleas is not expressed with as much precision and perspicuity as it might have been, yet it was considered by this court as a *positive direction* to the jury, that if they *believed* in the truth of the acknowledgement detailed by the witness, that it *did amount to such acknowledgement* by the defendant as the *law required* to destroy the legal presumption of payment; and as such it was approved, and the verdict and judgment thereupon given affirmed by this court : for the late Mr Justice *Duncan,* who delivered the opinion of the court in page 54, says, " the court, with superabundant caution, say, that if the jury *believe* the acknowledgement detailed by the witness, that this *does amount to such acknowledgement* by the defendant, *as the law requires to destroy the legal presumption of payment,* but still instruct them of its *weight,* (not legal effect if believed) they must judge." I am

[Summerville v. Holliday.]

aware that in *M'Lean* v. *Finley*, 1 *Penns. Rep.* 101, where an action of debt had been brought in the latter end of 1822, upon an administration bond given in March 1797, and the filing of an administration account in the register's office in 1805, was relied on by the plaintiff as being sufficient in law to rebut the presumption of satisfaction from lapse of time, the Chief Justice, who delivered the opinion of the court, said, "the judge who tried the cause very properly left the *effect* of filing the account to the jury, as a *matter purely of fact;*" but it is evident from the whole of the opinion taken altogether, that this court affirmed the judgment of the common pleas, because *they considered* the filing of the account *insufficient in law* to rebut the presumption ; and that if the court had given any direction as to the *legal effect* of it, it ought to have been against the plaintiff, who could not, therefore, make it good cause for reversing the judgment, that they had declined doing so but left it to the jury to be decided by them.

This court have decided and have so directed, as matter of *law*, what shall be sufficient to suspend the presumption of payment arising from lapse of time. This was done in *Penrose* v. *King*, 1 *Yeates* 344, one of the first cases, involving the question, that we have reported ; and so in the courts of the United States, as well as in the state courts. In *Cottle* v. *Payne*, 3 *Day* 292, the circuit court of the United States charged the jury in the following words: "if twenty years had elapsed since the cause of action accrued, *we think* the circumstances disclosed by the plaintiff are such as to *remove any presumption of payment.*" And in *Dunlap* v. *Ball*, 2 *Cranch* 184, 185, the supreme court of the United States reversed the judgment of the circuit court because it instructed the jury that "from the length of time stated in the facts agreed on, the bond in law is presumed satisfied, unless they should find from the evidence that interest was paid on the bond within twenty years from the 5th of September 1775 (the time of the last payment), or that a suit or demand was made on it within twenty years from the last mentioned time ;" instead of directing the jury, as the supreme court determined the circuit court ought, "that as twenty years had not elapsed, *exclusive* of the period during which the plaintiffs were under a *legal disability to sue*, before the action was brought, the *presumption of payment did not arise.*"

But it has been said, that it is impossible to lay down any general rule by which the circumstances of each particular case, as it arises, can be decided to be sufficient or insufficient to rebut the presumption of payment or to prevent it from arising, and therefore it becomes necessary to refer the matter to the jury to be decided as a question of fact without any instruction from the court. I am not prepared to admit the truth of this proposition to any great extent, and much less the force of it as a reason for referring the question exclusively as a matter of fact to the decision of the jury. The cases already referred to show, as it appears to me, that principles or rules have been laid down and established by the courts, that will apply

3 Q

[Summerville v. Holliday.]

to and govern the most of the cases that can arise to raise the question ; and if any should occur not falling within the principles already fixed and settled by adjudications on this subject, let the existence of the facts or circumstances of which evidence may be given as attending it, be left to the jury to be decided as a question of fact ; but as to their effect in law if found by the jury to exist, whether sufficient or not to prevent the presumption of satisfaction from arising where twenty years have run, it belongs to the court, and it is its duty to instruct the jury ; for the rule itself, raising the presumption of payment, being, as has been shown already, partly *artificial*, founded upon principles of policy, and so making it one of purely *legal* character, must therefore, in its application to cases as they shall arise, be directed entirely by the court, who alone can be presumed to be perfectly acquainted with the *reason* and foundation of the rule, and able to tell the jury whether the facts and circumstances, of which evidence may be given if found to exist, will set aside the reason of the rule, and if so that the rule is inapplicable to the case ; *cessante ratione, cessat et ipsa lex ;* otherwise it will be utterly impossible to preserve consistency and uniformity in the decisions that must be made on this subject, and to prevent it from remaining a question that cannot be solved by settled principles of law, and of necessary consequence an endless source of litigation. Having shown now, I conceive, as well from the reason of the rule as from the authorities by which it has been established, that it belongs to the court and not to the jury, under a given state of facts or circumstances, to direct the application and fitness of it, I come to consider the nature of the plaintiff's claim in this action, and the applicability of the rule to it under the circumstances existing, in connexion with the great length of time that has elapsed since it became payable. It being for a legacy charged upon land devised by the testator, is clearly not within our act of limitations, but may, I think, be considered obnoxious to the presumption of payment after a great length of time, without being demanded by the legatee, or attended with other circumstances showing that it has not been paid, as will appear from the following cases. *Fotherby* v. *Hartridge*, 2 *Vern.* 21 ; *Cusse* v. *Ash, Finch* 316 ; *Jones* v. *Turberville*, 2 *Ves. Jun.* 12, and *Lewis* v. *Lord Teynham*, cited therein, *Ibid.* 13 ; 4 *Bro. Ch. Rep.* 116 ; 2 *Ves. Jun.* 280, *per Lord Alvanley* ; *Arden* v. *Arden*, 1 *Johns. Ch. Rep.* 313 ; *Kane* v. *Bloodgood*, 7 *Johns. Ch. Rep.* 90 ; *Winstanley* v. *Savage*, 2 *M'Cord's Ch. Rep.* 437.

The same principles of policy and convenience in connexion with the motives which usually govern men in their dealings and intercourse with each other, and which gave birth to the rule that in its operation extinguishes bonds, judgments and mortgages after a lapse of twenty years, seem to make it equally necessary as well as applicable for the like purpose to the cases of legacies charged upon real estate. I therefore think if twenty years be suffered to pass by after the legacy has become payable without any steps being taken to enforce

[Summerville v. Holliday.]

the payment of it, and the delay unaccounted for consistently with non payment, it ought to be considered *prima facie* evidence of payment, and that the court, upon the trial of the action brought afterwards to recover it, ought so to instruct and direct the jury.

Believing that the case of *M'Cullough* v. *Montgomery*, 7 *Serg. & Rawle* 17, could not be easily distinguished from the present in principle; I purposely omitted bringing it into view until now, that I might the more fully compare the one with the other.   That was an action of debt upon a penal bill dated 14th October 1779, given by *George M'Cullough* to *Jane Montgomery* one of the plaintiffs (then *Jane Grubb*), in the penalty of 300 pounds, conditioned for the payment to the said *Jane* of her legacy as mentioned in her father's will, to the full satisfaction of her mother the widow *Grubb;* immediately after giving this bill *M'Cullough* married the widow, who was sole executrix of *Thomas Grubb* the testator's will.   By it 150 pounds, besides some articles of property, were bequeathed to *Jane* his daughter, the plaintiff, when she came to the age of eighteen years, which would not be until August 1783.   It does not appear from the report of the case when that action was commenced, but it was not until after 1806, when more than twenty-three years had run from the time that the legacy became payable and the bond forfeited.   During this interim however, to June term 1798 of Montgomery county court of common pleas, about fifteen years after the legacy had become payable, the legatee brought her first action for the recovery of it against *George M'Cullough* and his wife executrix of *Thomas Grubb* deceased, the testator, which was abated afterwards by her intermarriage with *David Montgomery;* when he brought another action in their joint names to recover the legacy against the same in the same court to August term 1806.   Pending this last suit *George M'Cullough* died, and the plaintiffs sued out a writ of *scire facias* against his executor to make him a party to it. The records of these suits and proceedings had therein, after being objected to by the defendant's counsel, were all given in evidence by the plaintiffs, to rebut the presumption of payment which was claimed by the defendant to have arisen from lapse of time.   After the evidence was closed on the trial, the court, among other matters, were requested by the defendant, " to charge the jury that the bond sued upon in that cause, ought to be presumed satisfied by the jury *under the evidence given;* and that there was *no evidence* to impugn the legal presumption that the bond was satisfied from its age."   In reply to this, the president judge of the court told the jury, that " the *suits for the legacy,* being instituted against the person who was also the obligor in the bond, would have the same effect as a suit for the amount of the bond given for the payment of the legacy ; and *take the case out of the presumption* which the law would otherwise raise in consequence of the lapse of time.   But it is for you to decide upon the facts.   If you are of opinion that there is no evidence in this case to impugn the legal presumption that the bond is satisfied from its age,

[Summerville v. Holliday.]

your verdict will be in favour of the defendant. But if you are of opinion that the legal presumption of payment is repelled by the evidence, your verdict ought to be in favour of the plaintiffs for the amount of the legacy.". Upon this charge to the jury, this court gave the following opinion delivered by the late Chief Justice. "In general, where a debt is due on a bond, and twenty years elapse, without any payment of principal or interest or any *demand* of payment by the obligee, it must be presumed that the debt is paid, because it is contrary to the usual course of human affairs, that a creditor should *acquiesce* so long without receiving satisfaction. But the presumption ceases when it appears that the creditor has *not acquiesced,* but endeavoured to obtain payment. Now in the first place, although this penal bill bears date in October 1779, yet the legacy secured by it was not payable till the 8th of August 1783, when *Jane Grubb* the legatee arrived at the age of eighteen years. Counting from that period, it appears, that after the expiration of only fifteen years *Jane Grubb* commenced an action of debt against *George M'Cullough* and his wife for the recovery of her legacy. This suit was brought to February term 1798, and abated by the plaintiff's marriage with her present husband *David Montgomery.* The action was renewed by the present plaintiffs against *George M'Cullough* and his wife to August term 1806; and from that time to the present moment, the plaintiffs have been endeavouring to obtain payment of the legacy, either by an action of debt in which the legacy was demanded, or by an action on the penal bill of *George M'Cullough.* It is *immaterial which form* of action was used, for in either the *recovery of the legacy* was the *object of the suit.* When the president of the court of common pleas left it to the jury, to determine upon this evidence, whether the usual presumption arising from length of time was not rebutted by the circumstances of the case, he charged *more favourably* to the defendant than he *had any right to expect,* for the charge might very properly have been, that taking all things into consideration *no presumption of payment arose."* Here then it is expressly ruled, where a bond was given to secure the payment of a legacy not charged upon land, that an action of debt commenced against the executrix of the will of the testator for the legacy and not on the bond, fifteen years after the legacy and the bond became payable, which being terminated ineffectually by the plaintiff's own act in getting married, she and her husband commenced a new action in their joint names against the executrix of the testator for the legacy, but still not on the bond, twenty-three years after it became payable ; prevented the presumption from arising, in an action brought afterwards on the bond itself against the obligor, that it was paid. This decision is not only in perfect accordance with the true spirit and reason of the rule, but sustained by all the authorities that have been mentioned, as it appears to me, on the subject. The rule is founded upon *acquiescence,* and without this for the space of twenty years there can be no presumption raised

[Summerville v. Holliday.]

of payment. Endeavouring to recover the money, whether by a proper or improper course of proceeding, within the period of twenty years, negatives *acquiescence*, and of course there can be no presumption. Who then could have doubted after this decision, that this court would not have held it error in the court below, when requested *by the plaintiff* to charge the jury in conformity to the principles of it, not only to refuse to do so, but to submit the question expressly to the jury, to be decided by them according to their notions, whatever they might be? I must confess for myself, that I could not have expected it. The president judge, in this case, with the case of *M'Cullough* v. *Montgomery* in hand, and after reading it to the jury, says to them, " on the authority of it the plaintiff's counsel contend, we should instruct you that the presumption of payment is rebutted, and repudiated in point of law. *This instruction we do not give. We leave it to you to determine this* from the evidence, whether the usual presumption arising from length of time is not rebutted by the circumstances of these ejectments, the *suit for the legacy*, the report of the auditors, and all the other facts proved in the cause." Now all this appears to me to be in direct contradiction to the letter and spirit of the decision in *M'Cullough* v. *Montgomery*, as well as every analogous principle of law. If there be any difference between that case and the one before us, it is that there is less room, if possible, left for the presumption to arise in the latter than in the former. The first was before this court in 1821, thirty-eight years after the bond became payable, without any demand being made of the debt until fifteen years after it fell due, when a suit was commenced, not on the bond, but for the legacy against the executrix of the testator, against whom an action of debt is given for the recovery of it by our act of assembly, but was abated by a voluntary act of the plaintiff herself, who however renewed it immediately, and the claim kept alive thus by a succession of suits, which may, for aught we know, be still pending and undetermined. In the present case the legacy was payable in 1798, thirty-five years ago, and a suit brought for the recovery of it in two years afterwards against the devisee of the land upon which it was charged, the only person then in being who was bound to pay it. This suit was pending till 1832, when it was brought on to trial and decided against the plaintiff, because the executors of the testator had not been made defendants with the devisee of the land, that the interest of the creditors of the testator's estate, if there were any, might be protected. *Holliday* v. *Summerville*, 3 *Penns. Rep.* 533. This action *continuing*, the claim was then brought, immediately after the termination of the first to the next term in the same court, and thus the *demand* for the legacy has been *continued* and *kept alive* without ceasing by actions in immediate succession without the least intermission, which is the most efficacious manner known to the law of doing it, in order to repel all presumption of a discharge.

In the case before us, the delay in not bringing the first suit to

[Summerville v. Holliday.]

trial before 1832, is fully accounted for, as I shall show in the sequel, by the report of the auditors; while the delay in not bringing the first suit commenced in the case of Mrs *Montgomery* in 1798, to trial before 1806, after a lapse of eight years, when it abated by a voluntary act of her own, and again, in not bringing the new suit commenced, upon her marriage in 1806, by her and her husband to trial before 1821, after a further delay of fifteen years more, is unaccounted for.   This may serve to show, that so far as vigilance in the prosecution of suits commenced has any tendency to rebut the presumption of payment, it is, as respects these two cases, in favour of the one under consideration.   But it seems clear to me, from the case of *M'Cullough* v. *Montgomery*, that this court held and adjudged the *pendency* of the actions, whether brought in proper form or not, so that they were for the *same* debt or *claim*, to be sufficient in law to prevent the presumption of satisfaction from arising; no matter what length of time was suffered to intervene between the commencement of the first action and the trial of it, or of the second or last, provided the first were commenced within the period of twenty years after the debt became payable, and the second *immediately* upon the termination of the first, without its being tried on the merits.   This appears also to be in perfect accordance with the reason and foundation of the rule, which takes place only where there is *acquiescence* on the part of the creditor, but which is completely excluded by his commencing suit within the twenty years, and persisting in the renewal of it, and keeping it *pending* until he can have a trial on the merits.

It is also supported by the opinions and decisions of not only the highest and most respectable judicial characters, but of courts of *dernier* resort.   In *Gifford* v. *Hort,* 1 *Sch. & Lef.* 386, it was held by Lord Chancellor *Redesdale,* that a lapse of forty years, during which period a suit was pending, and not abated, but remaining in such a situation that the defendant might at any time have applied to dismiss the bill if he had thought fit, would neither raise a presumption in favour of the defendant, nor yet furnish ground to impute laches to the plaintiff.   The bill referred to in that case, which had been pending so long, was commenced in 1763, by a mortgagor, for the redemption of the mortgaged premises against the mortgagee, who had taken possession of them twelve years before that.   The bill was amended in 1764, without any further proceeding being had on it till 1799, a space of thirty-five years, when the first complainant having died in the interim, a bill of revivor was filed by the person next in interest, which, after issue joined between the parties, was, upon hearing, dismissed, in March 1802.   Immediately after this dismissal of the bill of revivor the complainant therein died, and a bill of revivor was filed by the person next entitled to the estate, under the limitations contained in a deed of settlement, praying in like manner as the former bills did, that upon payment of what should appear to be justly due on the mortgage, the mortgaged

premises might be reconveyed discharged thereof.   This was the bill upon which a hearing was had before Lord *Redesdale* ; and from the facts of the case, it would appear ·that the mortgagee had been in the possession of the mortgaged premises upwards of fifty years, but with the exception of the first twelve years, bills with very short intervals for the redemption of the estate had been pending, yet Lord *Redesdale* said, " very little difficulty on the ground of the *lapse of time* would strike my mind in making this decree," although the mortgagee had been in possession of the mortgaged estate nearly three times as long as it would have been necessary· to have rendered his estate absolute had his possession been *acquiesced* in. And in *Cane* v. *Allen*, 2 *Dow's P. Ca.* 289 ; where a suit had proceeded as far as bill, answer and replication, but after that, no further steps were taken in the cause for upwards of twenty years ; the house of lords adjudged that this alone was not enough to warrant their lordships in refusing a specific performance, there being *acquiescence on both sides.*   Also, in *Moore* v. *Blake*, 4 *Dow's P. Ca.*, 230 ; the house of lords held, that if a bill be filed *in due time, delay in prosecuting the suit* will not bar the plaintiff of relief, and reversed the decree of Lord *Manners,* who had dismissed the bill of the plaintiff, a mortgagor, for redemption ; because, although having filed his bill in 1782, in due time, yet he had done nothing more in it till 1801, when he filed an amended bill for the revival of the first, which he brought to trial in 1808, when it was dismissed, as has been stated, by Lord *Manners,* for the delay, and is reported in 1 *Ball & Beat.* 62.

Keeping these principles in view, let us see when the first suit was commenced for the legacy in question, and how it has been continued and renewed, and the claim for it persisted in from that time down to the present.   Although thirty-four years had run from the· time that it became payable, before this action was commenced to recover it, yet in less than two years after it became payable, a suit was commenced by the plaintiff and her husband *James Summerville,* then living, but since dead, to August term 1800, in the court of common pleas of Huntingdon county, against *William Holliday,* the devisee and terre tenant of the land, charged with the payment of the legacy, to recover one-third thereof, which they considered their aliquot proportion of it.   On the 17th of January 1804, that suit, by agreement of the parties, was referred to five arbitrators, and continued under this rule of reference until the 22d of January 1805, when three of them made a report to the court, which was filed, setting forth, that after examining the cause at some length, they were of opinion that a final decision of it could not then be made, without doing injustice to the parties, as ejectments were then pending for the recovery of a great part, if not all the land upon which the legacy was charged, and therefore they had come to the conclusion, that no just determination could be made of the suit for the legacy, until decisions were had in the actions of ejectment, referring to them by the names of the respective parties therein, to wit:

[Summerville v. Holliday.]

*The Lessee of Henry Drinker* v. *Holliday,* and *The Lessee of E. Nicholas* and *J. Nicholas,* severally against the same.    The suit by *Drinker's Lessee* was not determined until October 1811, when it was decided in favour of *William Holliday,* the devisee; and the last of the suits with the *Nicholas's* not until the year 1831, when it was settled by a compromise between the person claiming under the *Nicholas* title, and *William Holliday,* the defendant in this action, claiming the land under the title of *William Holliday,* the devisee, who died in 1819, leaving it to him by will.   Immediately after these actions of ejectment were thus settled, *William Holliday,* the defendant in this action, being in the possession of the land by a devise of it to him under the will of the first devisee, was, by a writ of *scire facias* sued out by the plaintiffs in the first action for the legacy, made a party to it in place of the first devisee, then dead. On the 12th of March 1832, that action was brought to trial, and the court, in conformity to a decision of this court, held that it could not be supported, because the personal representatives of the first testator were not made co-defendants in it.

The commencement of the action for the legacy in 1800, against *William Holliday,* the first devisee of the land, charged with the payment of it, and the circumstances attending the pendency of it, down to its termination, are sufficient in law, without doubt, to prevent or rebut the presumption of payment before this last period. It has ever been held, as we have seen from the cases cited, that a suit commenced within the twenty years to recover the debt or claim, and a prosecution of it *without any unaccountable delay,* are sufficient for this purpose.   When I say without any *unaccountable delay,* I think that I am conceding what the authorities on the subject do not seem to require and at least as much as in reason can be demanded by the most rigid advocate of the rule ; but still, even with this qualification, that a suit or suits commenced shall be prosecuted " without any unreasonable delay," I think I shall show most clearly, that the lapse of time when that first suit was tried in March 1832, could not have defeated the plaintiff's recovery of the legacy in question.   It was pending, it is true, a long time beyond what is usual in some, and I would fain hope, in all of the counties of the state ; but this delay appears to be satisfactorily accounted for by the report of the arbitrators, who thought, that if the devisee of the land should lose any portion of it in the actions of ejectment then pending against him for it, that there ought to be a proportional abatement of the legacy, and therefore reported as they did, that the suit for the legacy could not be justly and finally decided, until the contest about the devisee's title to the land ended.   This report, although not binding upon the parties, and perhaps, at most, could only be regarded as a strong recommendation coming from judges of their own choosing, to delay pressing the suit or claim for the legacy, until the title to the land should be settled ; yet it seems to have had in it something so reasonable, equitable and just, that I am

[Summerville v. Holliday.]

inclined to think, that the plaintiffs in that action would have been censurable if they had not acquiesced in it. *Both parties,* however, *acquiesced,* and the plaintiffs forbore the further prosecution of their suit for the legacy, but not a moment longer than until the actions of ejectment were all settled, by which it is said, about one-sixth of the land was lost by *Holliday.* This delay then being perfectly consistent with the non payment of the legacy, and being, as I conceive, for reasons too, that ought not to be overlooked in the administration of justice, in order that a more just and equitable decision might be made in regard to the legacy, whether the whole or only a proportion of it should be paid; ought, instead of being looked upon as a circumstance that could prejudice the plaintiff's claim, to be considered as operating greatly in her favour; and goes to show most clearly that the delay in prosecuting the action did not take place because the legacy was satisfied or discharged in any way, but because the amount that ought in equity and justice to be paid, could not be ascertained until it should be known first, how much of the land charged with the payment of it, which formed the considera tion for the devisee's paying, could be held by the devisee of it under the testator's title. The plaintiff's delay then being for a *reasonable cause,* ought not, therefore, as Lord Chief Baron *Eyre* said, in *Toplis* v. *Baker,* 2 *Cox* 123, to be *turned against her.* It may be well considered in effect, as if an agreement had been made between the parties, that the trial of the suit for the legacy and the payment of it, should be deferred until it was decided how far the title which the testator had for the land was good, and how much of it his devisee should be able to hold under that title. Now, it cannot be pretended that lapse of time, however great, though it were a century, will raise the slightest presumption of payment before the debt by the terms of the obligation has become payable, or as long as, by the agreement of the parties, it can be shown that it has been postponed. It is only after the time for payment, either by the original terms of the obligation or the subsequent agreement of the parties, has arrived, that the twenty years commence running; for until that, delay cannot become irreconcilable or inconsistent with non payment. The report of the arbitrators and its *reasonable influence* upon the parties, who appear both to have acquiesced in it, therefore, not only accounts fully and satisfactorily for the delay that took place, in not bringing the first action for the legacy to a trial at an earlier day, but most powerfully rebuts all presumption of the legacy having been satisfied in any way, and the court below ought, as it appears to me, to have so instructed the jury.

If, then, the presumption of payment did not arise and could not have availed any thing in this first suit thus delayed and tried in March 1832, as I think I have shown that it could not, I am unable to perceive upon what principle it is, that it can be interposed in this action, which was commenced to the next succeeding term of the court, and as early as it was possible after the termination of the first.

3 R

[Summerville v. Holliday.]

The first, it must be observed, was decided in favour of the defendant, not upon the ground that the legacy had been satisfied, but upon a technical objection that the executors of the testator had not been made parties, as well as the devisee of the land, to the suit, so that the interest of the creditors of the estate of the testators might be protected.  This objection was taken and sustained upon the authority of a decision of this court settling the manner in which actions for the recovery of legacies, charged upon land, should be brought and prosecuted, made long after that suit had been commenced; and indeed but a short time before the trial of it came on.  And it would seem to me that this court is bound not to permit any rule, which it may have established, to defeat a party of his right, because that he happened to commence his action in a different form or manner from that subsequently settled on by the court.  The first action was brought against the party to whom the land was devised, provided he would pay the legacy.  It must be admitted by all that he was the only person who had any interest in discharging it, and if he did not do it, it was scarcely within the range of possibility, much less of presumption, that any body else would; hence, the circumstance of his, or that of his devisee, taking advantage of the technical objection to the manner in which the suit was brought, in order to get clear of it, if it is to weigh any thing in this case, that it was decided in favour of the defendant, goes to show that payment or satisfaction of the legacy had never been made, otherwise it would have been made the ground of defence instead of an objection that was purely technical, after a lapse of so many years from the death of the testator, when the claims of creditors could not have existed without being known, by suits having been commenced for them.  Seeing then that the first action was thus terminated against the plaintiff, without any default on her part, and the present one thereupon commenced immediately, it ought to be considered a continuation of the first by *journey's* accounts, or at least of the demand of the legacy by suit, which is sufficient to exclude the presumption of payment arising from lapse of time, as the claim for it was not suffered to lie *dormant*, nor *acquiesced* in by the plaintiff.  *Spencer's case*, 6 *Co.* 10, 11 ; *Dalison* 3.  And to this effect the court ought to have instructed the jury.  But such direction it refused, positively, to give ; and instead thereof, directed the jury that they must not only decide upon the *existence* of all these circumstances, but likewise upon their sufficiency in law to rebut the presumption of payment.  Thus leaving it to the jury to decide a mixed question of law and fact, according to their own notions, without any further direction from the court in regard to it.  This doctrine appears to me to be pregnant with inconceivable mischief, and utterly repugnant to every principle of law on the subject ; and, therefore, erroneous, and such as I can not accede to.

It is said that some fifty or sixty acres of the land charged with the legacy were recovered from the devisee, or those claiming under

[Summerville v. Holliday.]

him; if so, under the view which I have taken of the case, I think that the court below ought also to have instructed the jury that it was their duty to make a corresponding abatement in the amount of the legacy or sum to be recovered, in order to carry into effect what might fairly be considered was the intention of the testator, which was, that his estate should be distributed among his children in certain proportions; and what would seem also to have been thought right by the parties litigant, from their having acquiesced in the report or recommendation of the three arbitrators.

I also think the court below was wrong in directing the jury that only one-third of the legacy could be recovered; for the 300 pounds, the whole amount of it, are given to the plaintiff *Ruth Summerville*, her brother *John* and sister *Mary* jointly; there are no words of severalty connected with it. If the amount had been given to them to be divided among them *equally*, or any similar term or form of expression had been used by the testator, indicating his intention to give to each of them an equal divided third part of the 300 pounds, then the court would have been right; but when he has not done so, the court is bound to construe the bequest according to the common meaning and import of the terms employed; and can not supply words of *severalty*, upon mere conjecture that such would have met the approbation of the testator had they been suggested to him. The distinction between the terms necessary to constitute a joint and several bequest is too well known and established to require illustration; and if the words used by the testator in this case do not make the bequest of the 300 pounds to *John, Ruth* and *Mary* joint, I must confess that it would be difficult to conceive any other form or use of terms by which it might be done, unless the word "joint" or "jointly" be introduced, which never has been alleged to be indispensably necessary for such purpose. The bequest then being joint, and *John* and *Mary* being both dead before the commencement of this action, the right to sue for the whole legally survived to *Ruth* the plaintiff, and she would therefore be entitled to recover more than the one-third of the whole amount of it, unless the other remaining two-thirds were paid or satisfied in some way to *John* and *Mary* or released by them in their life times. But still, notwithstanding the court erred in this point, I think it would have been their duty to have charged the jury that, as *John* and *Mary* were both living when *James Summerville* and his wife brought their suit in 1800, and not having joined in it, nor yet having brought any other suit to recover their proportions of the legacy, it ought, from the lapse of time and the acquiescence on the parts of *John* and *Mary*, to be presumed that they were paid or had released their respective proportions. Indeed there was some slight evidence given by the plaintiff herself that *John* had relinquished his claim to it in favour of *William Holliday* the first devisee. It is true that this latter part of the direction which it would have been proper to have given to the jury on this point would have neutralized the first part of it, so as to have pro-

[Summerville v. Holliday.]

duced the same result with the charge actually given, that is, that not more than one-third of the whole amount of the legacy could be recovered in this action.    But still it is important to observe and attend to the lines of demarcation as laid down by the law, in order to avoid confusion and uncertainty.

For the first error which I have noticed and discussed, I think the judgment of the common pleas ought to be reversed and the cause sent back for another trial under a proper direction to the jury.

Judgment affirmed.