IN THE MATTER OF A JOHN DOE GRAND JURY
INVESTIGATION.

Suffolk. September 7, 1990. - November 5, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Attorney at Law*, Attorney-client relationship. *Privileged Communication.
Waiver. Evidence*, Privileged communication. *Grand Jury.*

Statement of the principles underlying the attorney-client privilege. [481-
483]
In the circumstances shown by the record of a hearing on a motion by the
Commonwealth to compel testimony of an attorney before a grand jury
concerning confidential communications made to him by a client the
day before the client's death, the deceased's attorney-client privilege
was not overridden in regard to those communications, disclosure of
which was sought by the Commonwealth during an investigation into
the possible responsibility of the deceased and others for the deaths of
the deceased's wife and son. [483-486] NOLAN, J., dissenting.

MOTION to compel testimony of a witness before the grand
jury filed in the Superior Court Department on March 30,
1990.

A question of law was reported to the Appeals Court by
*James P. Donohue, Jr.*, J. The Supreme Judicial Court
transferred the case on its own initiative.

*Thomas J. Mundy, Jr.*, Assistant District Attorney
(*Nijole Makaitis*, Assistant District Attorney, with him) for
the Commonwealth.

*Nancy Gertner* for John Doe.

*Richard I. Clayman*, for Dorothy Stuart & others.

*Michael Casoli*, for the estate of Charles Stuart, joined in
a brief.

*Judith H. Mizner*, for Massachusetts Association of Crim-
inal Defense Lawyers, amicus curiae, submitted a brief.

O'CONNOR, J. A Suffolk County grand jury has been investigating the possible responsibility of the late Charles Stuart and others for the deaths of Carol DiMaiti Stuart and Christopher Stuart. The grand jury have heard evidence that on January 3, 1990, the day before Charles Stuart died, Charles Stuart conferred for two hours with his attorney, John Dawley, in Attorney Dawley's office. The Commonwealth wants Attorney Dawley to disclose the substance of Charles Stuart's statements at that conference. Dorothy Stuart, who is the administratrix of Charles Stuart's estate, has told the grand jury that she does not believe that she has the right to waive any attorney-client privilege that may apply to Charles Stuart's communications with Attorney Dawley, and that, in any event, if she does have such a right, she will not exercise it by waiving the privilege.

The Commonwealth, by a motion filed in the Superior Court, has requested that a judge order Attorney Dawley to testify before the grand jury concerning the substance of the January 3 conversation. At a hearing on the motion, the Commonwealth argued that the interests of justice require that the privilege be overridden. Dorothy Stuart and all of Charles Stuart's heirs opposed the motion. Purporting to act under Mass. R. Crim. P. 34, 378 Mass. 842, 905-906 (1979), a judge reported to the Appeals Court the question whether, in the circumstances of this case, the attorney-client privilege should be overridden. We transferred the matter to this court on our own initiative. We pass any question concerning the propriety of the report. None of the parties challenges the report on procedural grounds, and we are satisfied that efficiency in the administration of justice would be best served by our answering the reported question regardless of whether, as a technical matter, it is properly before us.

We begin by stating our answer to the reported question as follows: "No. In the circumstances shown by the record, the attorney-client privilege should not be overridden." "The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of per-

sons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt* v. *Blackburn*, 128 U.S. 464, 470 (1888). The privilege "extends to all communications made to an attorney or counsellor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations, whether with a view to the prosecution or defence of a suit, or other lawful object." *Hatton* v. *Robinson*, 14 Pick. 416, 421 (1833). In *Hatton*, this court stated that the principle upon which the attorney-client privilege is founded is this: "that so numerous and complex are the laws by which the rights and duties of citizens are governed, so important is it that they should be permitted to avail themselves of the superior skill and learning of those who are sanctioned by the law as its ministers and expounders, both in ascertaining their rights in the country, and maintaining them most safely in courts, without publishing those facts, which they have a right to keep secret, but which must be disclosed to a legal adviser and advocate, to enable him successfully to perform the duties of his office, that the law has considered it the wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney shall be for ever sealed." *Id.* at 422.

Because "the attorney-client privilege may serve as a mechanism to frustrate the investigative or fact-finding process, it creates an inherent tension with society's need for full and complete disclosure of all relevant evidence during implementation of the judicial process." *In re Grand Jury Investigation*, 723 F.2d 447, 451 (6th Cir. 1983), cert. denied, 467 U.S. 1246 (1984). But that is the price that society must pay for the availability of justice to every citizen, which is the value that the privilege is designed to secure. The "social good derived from the proper performance of the functions of lawyers acting for their clients . . . outweigh[s] the harm that may come from the suppression of the evidence." *Common-*

*wealth* v. *Goldman*, 395 Mass. 495, 502, cert. denied, 474 U.S. 906 (1985), quoting *United States* v. *United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950).

The privilege of insisting that the attorney keep confidential the client's disclosures made to the attorney in his or her professional capacity belongs only to the client, and therefore can be waived only by the client, *Hatton* v. *Robinson, supra* at 422; *Foster* v. *Hall*, 12 Pick. 89, 93 (1831), or, in some instances at least, by the executor or administrator of the client's estate. *Phillips* v. *Chase*, 201 Mass. 444, 449 (1909), appeal dismissed, 216 U.S. 616 (1910). *Brooks* v. *Holden*, 175 Mass. 137, 141 (1900). There has been no waiver in the present case.

It is important to note that the attorney-client privilege survives the client's death. Survival of the privilege is the clear implication of this court's early pronouncements that communications subject to the attorney-client privilege "cannot be disclosed at any future time," see *Foster* v. *Hall*, *supra* at 93, and that "the mouth of the attorney shall be for ever sealed." See *Hatton* v. *Robinson, supra* at 422. Also, survival of the privilege is necessarily implied from our cases dealing with the power of executors and administrators to waive the privilege which had belonged to the deceased client. If the privilege were to end upon the death of the client, there would be nothing for the executor or administrator to waive.

The Commonwealth does not contend that Charles Stuart's death terminated any preexisting attorney-client privilege. Rather, the Commonwealth's position is that Charles Stuart, having died, no longer can be harmed by the disclosure of his communications to his attorney, and therefore, in this case, the privilege should be "overridden" because society's interest in ascertaining the truth concerning the deaths of Carol DiMaiti Stuart and Christopher Stuart and in identifying the parties responsible therefor outweighs the value sought to be promoted by means of the attorney-client privilege.

No Massachusetts case supports the proposition advanced by the Commonwealth. The Commonwealth's reliance on *Doherty* v. *O'Callaghan*, 157 Mass. 90 (1892), as bolstering the argument that, in resolving the present controversy, we ought to "give some consideration to the effect of the client's death in weighing the competing interests," is misplaced. In *Doherty*, we did not weigh competing interests. In *Doherty*, we said: "Undoubtedly, while the testator lives, the attorney drawing his will would not be allowed, without the consent of the testator, to testify to communications made to him concerning it, or to the contents of the will itself; but after his death, and when the will is presented for probate, we see no reason why, as a matter of public policy, the attorney should not be allowed to testify as to directions given to him by the testator, so that it may appear whether the instrument presented for probate is or is not the will of the alleged testator." *Id.* at 93. We said that "we are of opinion that the case does not fall within the reason of the rule relating to privileged communications," and therefore the rule simply did not apply. *Id.* In the will situation, the testator's communication is designed for publication after death. Neither the client's nor the public's interest would be served by sealing the attorney's lips forever. Those circumstances are unique, however. As the attorney-client privilege rule recognizes, ordinarily the client's and the public's interests are best served by a rule of confidentiality that applies both before and after the death of the client.

The Commonwealth places substantial reliance on an intermediate appellate court decision in Pennsylvania entitled *Cohen* v. *Jenkintown Cab Co.*, 238 Pa. Super. 456 (1976). We have been unable to find any case subsequently decided by the Pennsylvania Superior Court or the Pennsylvania Supreme Court in which the court has followed the *Cohen* holding. In that case, the plaintiff brought an action against the employer of a taxicab driver to recover for injuries the plaintiff had sustained in a motor vehicle accident. There was a question as to the identity of the offending driver, especially as to whether the driver was an employee of the defendant.

The taxicab driver had revealed to his attorney that he had been the driver, and then the driver died. In determining the admissibility of that revelation in the case against the taxi company, the Pennsylvania Superior Court weighed the interests of the deceased driver and his estate in the nondisclosure of the driver's communication to his attorney against the plaintiff's interest in disclosure, and decided that, "in the interests of justice," the statement should have been admitted at trial. *Id.* at 464. The Commonwealth would have this court engage in a similar weighing and balancing of interests.

There are clear factual distinctions between the *Cohen* case and the present matter, which we do not pause to identify, because, even if there were not such distinctions, we would not follow *Cohen.* As we have indicated, extraordinarily high value must be placed on the right of every citizen to obtain the thoughtful advice of a fully informed attorney concerning legal matters. A rule that would permit or require an attorney to disclose information given to him or her by a client in confidence, even though such disclosure might be limited to the period after the client's death, would in many instances, we fear, so deter the client from "telling all" as to seriously impair the attorney's ability to function effectively. We think that that potential is inconsistent with the traditional value our society has assigned, in the interests of justice, to the right to counsel and to an effective attorney-client relationship. Therefore, except where mandated by constitutional considerations, see *Commonwealth* v. *Goldman, supra* at 502 n.8, which are not a factor in this case, we conclude that the attorney-client privilege should not yield either before or after the client's death to society's interest, as legitimate as we recognize that interest is, in obtaining every man's evidence.

We mention one final point. The assistant district attorney representing the Commonwealth at oral argument before this court suggested for the first time in that argument that the conference in question between Charles Stuart and his attorney may have related to a proposed crime, that is, to the

possible future defrauding of an insurance company. We rec-
ognize that no legitimate interest of a client and no public
interest would be served by a rule that would preserve the
secrecy of that kind of communication, and that therefore,
"[t]here is no privilege between attorney and client where
the conferences concern the proposed commission of a crime
by the client" (citations omitted). *Commonwealth* v. *Dyer*,
243 Mass. 472, 505-506 (1922), cert. denied, 262 U.S. 751
(1923). We go no further than to make that observation be-
cause the Commonwealth's "suggestion" has not been
briefed by the parties nor has there been any threshold show-
ing in the record that the January 3 conference related to the
commission of a future crime. See *United States* v. *Zolin*,
491 U.S. 554, 570-572 (1989).

We conclude by repeating our answer to the reported ques-
tion, which is, "No. In the circumstances shown by the rec-
ord, the attorney-client privilege should not be overridden."


NOLAN, J. (dissenting). The attorney-client privilege is the
product of hallowed tradition. Despite the majority's inflexi-
ble ruling today, however, the privilege is not absolute. Sev-
eral exceptions have been carved out over time in the context
of: parties claiming through the same deceased client (*Phil-
lips* v. *Chase*, 201 Mass. 444 [1909]); disputes between cli-
ents who share the same attorney (*Thompson* v. *Cashman*,
181 Mass. 36 [1902]); communications involving a client's
intent to commit a future crime (*Commonwealth* v. *Dyer*,
243 Mass. 472, 505-506 [1922], cert. denied, 262 U.S. 751
[1923]); and a deceased client's instructions on the drafting
of a will (*Doherty* v. *O'Callaghan*, 157 Mass. 90 [1892]).

It has been noted that the rationale of the privilege is that
"the detriment to justice from a power to shut off inquiry to
pertinent facts in court, will be outweighed by the benefits to
justice (*not to the client*) from a franker disclosure in the
lawyer's office" (emphasis added). McCormick, Evidence
§87, at 175 (2d ed. 1972). Accordingly, the court should
adopt a limited exception to the privilege in those cases

where the interests of the client are so insignificant and the interests of justice in obtaining the information so compelling, that the administration of justice is better served through waiver.

The Supreme Court of Pennsylvania, in 1838, recognized just such an exception. *Hamilton* v. *Neel*, 7 Watts 517, 521-522 (1838). In *Hamilton*, the court stated in reference to the attorney-client privilege that, "where it is impossible that the rights or the interests of the client can be affected by the witness's giving evidence of what came to his knowledge by his having been counsel and acted at the time as attorney or counsel at law, the rule has no application whatever, because the reason of it does not exist." The proposition was more recently reiterated in a 1976 decision of the Pennsylvania Superior Court, *Cohen* v. *Jenkintown Cab Co.*, 238 Pa. Super. 456, 464 (1976). In *Cohen*, the judge stated that the attorney-client privilege exists to aid in the administration of justice, and when that administration of justice is frustrated by the exercise of the privilege, the judge may order disclosure. This proposition from *Cohen* was cited with approval by the Supreme Court of Nebraska in *League* v. *Vanice*, 221 Neb. 34 (1985).

In *Cohen*, the court used a three-part test to determine whether the interests of justice warranted a waiver of the privilege. The test set out in *Cohen* involved consideration of: (1) the impact the disclosure would have on the client's daily affairs; (2) whether the disclosure would likely lead to liability for the client or his estate, and (3) whether disclosure would "blacken the memory" of the deceased client. *Id.* at 462-464.

A modified version of that test ought to be adopted in Massachusetts. I would suggest a three-step approach for a judge to utilize in determining when to override the attorney-client privilege in the interests of justice. Before there is any disclosure of the substance of an attorney-client conversation, the judge ought to first make a preliminary finding under the *Cohen* factors. If the judge is satisfied that, regardless of what the substance of the disclosure may turn out to be,

there would be a minimal impact on the client's interests, then the judge may order a limited, in camera disclosure of the substance of the conversation.

Second, once the judge knows the substance of the disclosure, he or she would reapply the *Cohen* factors. If the judge is satisfied that the harm to the client's interests is minimal, the judge should then proceed to step three, a balancing of the competing societal interests. The judge must balance the interests of society in being able to utilize the information against its interest in maintaining the public confidence in the attorney-client privilege. Only if the judge finds that the impact on the public's confidence would be slight compared to the public harm caused by the absence of disclosure, should the judge override the privilege. If the judge determines that the privilege is not to be overridden in a particular case, all persons privy to the in camera disclosure would be bound by the privilege and could not reveal the confidences.

When the above analysis is applied to the instant case, it becomes apparent that a lower court judge would have been warranted in ordering at least an in camera disclosure of the substance of the attorney-client conversation. First, even without knowing the exact content of the conversation, disclosure appears unlikely to harm the client. The disclosure could not possibly have any effect on Charles Stuart's affairs because he is dead. Second, the estate apparently has few or no assets and thus any liability is largely irrelevant. Third, given the present reputation of Charles Stuart, it is difficult to conceive of any revelation which could further deface his memory.

If the in camera disclosure supports this preliminary finding, the judge would then face the delicate task of balancing the relative public harms which would result from a disclosure or lack thereof. The Commonwealth asserts that, in this case, society has an interest in learning the truth behind these murders. This should be balanced against society's need for public confidence in the attorney-client privilege. Although I would remand the case for a determination

whether the privilege should be overridden in this case, I would acknowledge that simply gaining information for the sole purpose of obtaining a conviction is not, in most instances, sufficient to override the privilege. However, a situation where a murderer is still at large and likely to strike again would be a compelling example of a case in which the societal interest in preserving the privilege would yield to disclosure.

Under the court's analysis, there is no "safety valve," no mechanism by which the attorney-client privilege may ever be overridden by the court in the interests of justice. I would urge the court to adopt this very narrow "interests of justice" exception. I would remand the case to the Superior Court for a determination of how this case should indeed be decided in the light of the three-step approach enunciated in this opinion.

Accordingly, I dissent.