**COLONIAL GAS COMPANY, Plaintiff,**

v.

**The AETNA CASUALTY & SURETY COMPANY, Defendant.**

**Civ. A. No. 89–1106–WD.**

United States District Court,
D. Massachusetts.

March 5, 1992.

Ralph D. Gants, Scott P. Lewis, Tamara S. Wolfson, Palmer & Dodge, Boston, MA, for plaintiff.

James L. Ackerman, Robert A. Whitney, Day, Berry & Howard, Boston, MA, for defendant.

## ORDER ON MOTIONS TO COMPEL PRODUCTION AND TO STRIKE REPORT

BOWLER, United States Magistrate Judge.

Pending before this court are defendant Aetna Casualty & Surety Company's motion to compel (Docket Entry # 56) and motion to strike (Docket Entry # 72). Plaintiff Colonial Gas Company ("plaintiff") objects to production on the grounds of attorney-client privilege and work product doctrine. (Docket Entry # 60). The

procedural history and factual background are summarized below.[1]

## PROCEDURAL HISTORY

Defendant Aetna Casualty & Surety Co. ("defendant") originally filed its motion to compel with an accompanying affidavit and memorandum in June, 1991. (Docket Entry ## 56–58). The defendant seeks to compel production of 311 allegedly privileged documents. The plaintiff objects to production and submitted an affidavit in support thereof. (Docket Entry ## 60–61). By Order issued September 24, 1991, this court directed the defendant and the plaintiff to confer and for the plaintiff to file a report as to the remaining documents in dispute. (Docket Entry # 64). 139 F.R.D. 269.

On October 15, 1991, the plaintiff submitted a report summarizing the plaintiff's interpretation of the disputed documents with an accompanying affidavit. (Docket Entry ## 67–68). On November 12, 1991, the defendant filed a motion to strike the plaintiff's report (Docket Entry # 72) to which the plaintiff objects (Docket Entry # 73).

On November 25, 1991, this court held a hearing and took the motions to strike (Docket Entry # 72) and to compel (Docket Entry # 56) under advisement. After further review, on January 3, 1992, this court directed the plaintiff to produce the disputed documents for *in camera* inspection on or before January 21, 1992. (Docket Entry # 79). On January 17, 1992, the plaintiff submitted the documents for *in camera* review.

## FACTUAL BACKGROUND

In this action, the plaintiff alleges breach of a number of comprehensive general liability insurance contracts (collectively: "CGL policies"), unfair and deceptive trade practices under Mass.Gen.L. ch. § 93A and unfair and deceptive settlement practices under Mass.Gen.L. ch. § 176D. The plaintiff maintains that the defendant, its general liability insurance carrier, improperly de-

---

1. Although much of the history is delineated in this court's prior orders (Docket Entry ## 64, 79), for convenience this Order encapsulates portions of these prior orders.

nied the plaintiff coverage under its CGL policies for a $600,000 dollar payment made by the plaintiff to the Massachusetts Department of Public Health ("DPH").[2] The plaintiff made the payment in connection with Massachusetts' statutory program to compensate owners of urea-formaldehyde foam insulated homes. Mass.Gen.L. ch. 111, § 5 note (St.1985, ch. 728; hereinafter: the "UFFI Act").

From 1977 to 1979, the plaintiff, through an independent contractor, insulated approximately 400 Massachusetts homes with urea-formaldehyde foam insulation ("UFFI"). (Docket Entry # 1, ¶¶ 10 & 12). In 1979, the Massachusetts Commissioner of Public Health ("the Commissioner") banned the sale and distribution of UFFI. Mass.Regs.Code tit. 105, §§ 650.000 *et seq.* In 1980, the Commissioner created a procedure requiring dealers, installers, distributors, and manufacturers of UFFI to repurchase the UFFI if homeowners claimed to suffer adverse health effects. Mass.Regs. Code tit. 105, § 650.222 (the "UFFI repurchase regulations").[3]

By letters dated February 5 and April 5, 1981, the parties discussed the plaintiff's coverage in connection with the UFFI repurchase regulations. By letter dated December 11, 1981, the defendant formally reserved its right to disclaim coverage in connection with a class action suit brought by UFFI homeowners against the plaintiff's predecessor, Cape Cod Gas. (Docket Entry # 68). As averred by the plaintiff's counsel, the plaintiff therefore first contemplated coverage litigation with the defendant in 1981. By letters dated December 7, 1982, and October 19, 1984, the defendant reiterated its disclaimer. (*Id.*).

Effective July 1, 1986, the UFFI Act authorized the DPH to create a "UFFI Trust Fund" to finance the testing and removal of UFFI from residential dwellings. In November 1985, in anticipation of the UFFI Act, the DPH contacted the plaintiff and requested a voluntary contribution of $950,000 dollars. (Docket Entry # 1, ¶ 21). Shortly thereafter, the plaintiff contacted the defendant about coverage under the CGL policies. Similar to its earlier representations, the defendant, by letter dated June 20, 1986, disclaimed coverage. (Docket Entry # 68).

A number of homeowners commenced litigation against the plaintiff under the UFFI repurchase regulations. On December 14, 1987, after negotiating with the DPH, the plaintiff paid $600,000 dollars into the UFFI Trust Fund. (Docket Entry # 61). The plaintiff's payment relieved the plaintiff of liability under the UFFI repurchase regulations with the exception of bodily injury not reasonably discoverable by the homeowner. (Docket Entry # 1, ¶ 24).

The subject matter of the asserted attorney-client privilege and the work product doctrine includes communications between the plaintiff and plaintiff's counsel, Scott Lewis, Molly H. Sherden and other attorneys of the law firm Palmer & Dodge, Boston, Massachusetts. On April 25, 1991, the defendant deposed Mr. Lewis, the plaintiff's designated representative under Fed. R.Civ.P. 30(b)(6), in connection with the DPH negotiations.[4] During discovery, the plaintiff supplied the defendant with approximately 20,000 documents and, as noted above, refused to supply 311 others on the grounds of attorney-client privilege and work product doctrine. In particular, the plaintiff produced to the defendant all of the documents in its possession concerning the UFFI claims against the plaintiff. (Docket Entry # 61). The plaintiff also produced to the defendant all of the documents in its possession regarding its negotiations with the DPH. (Docket Entry # 61).

---

**2.** The plaintiff is a public utility organized under Mass.Gen.L. ch. 164. The defendant, a Connecticut insurance company, contracted with the plaintiff to provide general liability insurance.

**3.** The UFFI repurchase regulations were later extended to apply to all UFFI homeowners, regardless of adverse health effects.

**4.** The plaintiff does not intend to rely upon Mr. Lewis' testimony at trial. (Docket Entry ## 74–75).

## DISCUSSION

### I. *Attorney–Client Privilege*

 As noted in this court's prior Order (Docket Entry # 64), the attorney-client privilege protects communications made between an attorney and a client for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Matter of John Doe Grand Jury Investigation*, 408 Mass. 480, 562 N.E.2d 69, 70 (1990) (attorney-client privilege survives client's death). Although the privilege promotes unfettered communications between the attorney and the client, *Id.* 562 N.E.2d at 70, the privilege runs contrary to full disclosure of relevant information and is, therefore, narrowly construed. *Commonwealth v. O'Brien*, 377 Mass. 772, 388 N.E.2d 658, 661 (1979) (privilege may extend to preliminary communications looking to representation even if representation is not undertaken). Finally, the plaintiff, as the party asserting the privilege, has the burden of proof. *Federal Trade Comm'n v. Shaffner*, 626 F.2d 32, 37 (7th Cir.1980).

 Application of the privilege is a question of fact. *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 744 (Fed. Cir.1987). Although the privilege belongs to the client, the privilege extends to communications made *by the attorney* to the client that would "reveal, directly or indirectly, the substance of a confidential communication by the client." *Nedlog Co. v. ARA Services, Inc.*, 131 F.R.D. 116, 118 (N.D.I.1989); *accord, American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d at 745.

 The privilege may also be waived *by the client. Matter of John Doe Grand Jury Investigation*, 562 N.E.2d at 70. Voluntary disclosure to an outside party generally waives the privilege. *See In re Seal*, 676 F.2d 793, 809 (D.C.1982) (voluntary disclosure by client to third party waives privilege); *cf. Greater Newburyport Clamshell Alliance v. PSCHN*, 838 F.2d 13, 20 (1st Cir.1988) (adopting balancing test to determine waiver in light of quasi-constitutional situation); *Smith v. Denny's Restaurant, Inc.*, 62 F.R.D. 459, 458 (N.D.Ill.1974) (existence of waiver depends upon balancing value of full discovery against protection afforded by privilege).

 The defendant specifically contends that the plaintiff, by filing this lawsuit alleging claims for breach of contract, unfair and deceptive trade practices and unfair and deceptive settlement practices, placed information protected by the privilege at issue and therefore waived the privilege. Although the defendant's argument is well reasoned, the attorney-client privilege is not *automatically* waived by bringing suit. *Zenith Radio Corporation v. United States*, 764 F.2d 1577, 1580 (Fed. Cir.1985). Rather, this court "must look to what actions were taken by [the plaintiff] which would result in a finding of implicit waiver." *Sax v. Sax*, 136 F.R.D. 541, 542 (D.Mass.1991); *see Burlington Industries v. Exxon Corporation*, 65 F.R.D. 26, 35 (D.Md.1974) (attorney-client privilege promotes "confidential communications that may well deal with the very suit in question").

In this case, the plaintiff contends that its payment into the UFFI Trust Fund is covered under the CGL policies. The reasonableness of the plaintiff's payment depends upon the interpretation of the UFFI regulations and the CGL policies as opposed to the reasonableness of counsel's advice to the plaintiff regarding the payment. Moreover, the plaintiff does not intend to rely upon counsel's advice in order to support its claims.[5] Nor does the plaintiff intend to offer the testimony of its counsel. *See Gagne v. Ralph Pill Electric Supply Co.*, 114 F.R.D. 22, 26 (D.Me.19867) (no waiver where party failed to show reliance upon counsel's advice).

### II. *Work Product Doctrine*

 As noted in this court's prior Order (Docket Entry # 64), the work product doctrine protects the following: (1) a docu-

---

5. The case cited by the defendant, *Merritt v. Superior Court*, 9 Cal.App.3d 721, 88 Cal.Rptr. 337 (Cal.1970), is therefore inapposite.

ment or tangible thing, (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for a party's representative. *Pasteris v. Robillard*, 121 F.R.D. 18, 20 (D.Mass.1988). The doctrine is embodied in the Supreme Court's decision of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and its progeny, now codified in Fed. R.Civ.P. 26(b)(3). Opinion work product revealing an attorney's mental impressions receives heightened protection. *Admiral Insurance Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir.1989); *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977); *Boring v. Keller*, 97 F.R.D. 404, 407 (D.Colo.1983).[6] The pertinent test is:

> whether in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

*Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 375 (N.D.Ill.1982) (citations omitted).

The doctrine protects documents prepared in previous litigation such as those prepared by the plaintiff in anticipation of litigation under the UFFI repurchase regulations. *See In re Murphy*, 560 F.2d at 335; *see generally*, 4 *Moore's Federal Practice* ¶ 26.64(2) (1991). The plaintiff first contemplated coverage litigation with the defendant in 1981. Accordingly, documents dated on or after April 1981 may receive protection if "the primary motivating purpose underlying the preparation of the [document] was to aid in future litigation." *In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145 (D.Mass.1988). The issue is somewhat complicated because of the interrelated nature between the homeowners' litigation against the plaintiff under the UFFI repurchase regulations and the instant insurance coverage litigation to resolve whether the CGL policies cover the plaintiff's payment into the UFFI Trust Fund. Particular documents may therefore relate

to both the homeowners' litigation and to the coverage dispute. *See Catino v. Travelers Insurance Co., Inc.*, 136 F.R.D. 534, 538 (D.Mass.1991).

 The burden is on the party resisting discovery, i.e., the plaintiff, to demonstrate that the requested material constitutes work product. *Sham v. Hyannis Heritage House Hotel, Inc.*, 118 F.R.D. 24, 25 (D.Mass.1987) (documents prepared by insurance investigator are unprotected). Even if the material satisfies this test, it is still discoverable upon a showing that the party seeking discovery has a "substantial need" for the materials and cannot obtain the "substantial equivalent" of the materials without "undue hardship." Fed. R.Civ.P. 26(b)(3). *Connelly v. Dun & Bradstreet, Inc.*, 96 F.R.D. 339, 343 (D.Mass.1982); *Burlington Industries v. Exxon Corporation*, 65 F.R.D. at 43. In this regard, it should be noted that the defendant has received documents relating to the UFFI claims and to the plaintiff's negotiations with the DPH. (Docket Entry # 61); *see generally* 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2025. Finally, neither inconvenience nor expense constitute sufficient cause to find undue hardship. *Connelly v. Dun & Bradstreet*, 96 F.R.D. 339, 343 (D.Mass. 1982).

The plaintiff does not automatically waive work product protection by disclosing the information to another person. The existence and extent of a waiver depends upon the following three factors:

> (1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege.

*In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145

---

**6.** It should be noted that, after *in camera* review, a large segment of the documents withheld involve mental impressions.

(1st Cir.1988) (protection waived by disclosure to SEC, a potential adversary, without any assurance of confidentiality). With the exception of document 209, disclosed to the plaintiff's brokers, there is no indication that the plaintiff disclosed allegedly privileged documents to the DPH or other non-parties with the exception of an insurance consultant.[7]

With the above precepts in mind, this court now turns to the particular documents at issue. For convenience, this court will follow the 21 categories used by the plaintiff in its October 15, 1991, report (Docket Entry # 67).[8]

### A. Insurance Coverage Matters as to the UFFI Repurchase Regulations after Aetna's Initial Disclaimer in 1981

■ With the exception of document 209 and 292, the plaintiff claims that the documents in this category (Nos. 11, 90, 104, 158, 188, 191, 192, 208, 209, 211, 220, 238, 251, 265, 287, 290, 298, 299, 306, 383, 431, 435, 442, and 533) are subject to the attorney-client privilege. The plaintiff also asserts work product protection for documents 209 [9] and 292. With the exception of document 533, all of these documents involve communications between the plaintiff and its counsel made for the purpose of obtaining legal advice.

As to document 209, disclosed to the plaintiff's brokers, this document is marked confidential and includes confidential communications between the plaintiff and its attorney for the purpose of obtaining legal advice regarding coverage litigation. The document also contains counsel's opinion work product which receives heightened protection. The plaintiff's disclosure to its

broker does not waive work product protection under the *In re Atlantic* factors noted above and in light of the special protection afforded counsel's mental impressions.[10] *See In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145 (1st Cir.1988); *Catino v. Travelers Insurance Co., Inc.*, 136 F.R.D. 534, 539 (D.Mass.1991).

Document 533, however, does not involve legal advice and is therefore discoverable. The plaintiff is ORDERED to produce document 533.

### B. Insurance Coverage Matters as to the UFFI Trust Fund After Aetna's Disclaimer in 1986

As to documents in this category (25, 38, 39, 79, 270, 272, 329, 415, 451, 452, 461, 501 and 502), the plaintiff asserts an attorney-client privilege. The plaintiff additionally asserts that the work product doctrine protects documents 38, 272 and 452. Having reviewed each document, this court agrees. All of the documents in this category are properly withheld.

### C. Analysis of DPH UFFI Ban and Repurchase Regulations Court Challenges to the DPH Regulations, DPH Revisions, and the Federal CPSC UFFI Ban Regulation and Court Challenge in Conjunction with the Defense of Repurchase Claims and for Product Liability Suits

■ As to documents in this category (156, 185, 189, 190, 194, 232, 236, 249, 250, 253, 255, 410 and 403), the plaintiff asserts an attorney-client privilege. The plaintiff additionally asserts that the work product doctrine protects documents 189 and 403. Having reviewed each document, this court agrees. Although all the documents in-

---

7. See ¶ U *infra.*

8. Document numbers referred to are those contained in the plaintiff's privilege log filed with the defendant's motion to compel (Docket Entry # 56). Because of the numerous duplications of documents, this court assessed whether each document was protected under the privilege claimed for its lowest number. In the event such document was not protected, this court then viewed the remaining identical documents in the privilege log to determine whether an additional ground for protection was claimed

and whether, under this additional ground, the document remained shielded from discovery.

9. Although not noted in the privilege log, the plaintiff argues in favor of work product protection for document 209 in its report. (Docket Entry # 67, n. 2).

10. Accordingly, this court need not address whether such disclosure constitutes a waiver of the attorney-client privilege.

volve communications from counsel to the plaintiff, these communications would tend to reveal confidential communications. Documents in this category are therefore properly withheld. *See Nedlog Co. v. ARA Services, Inc.,* 131 F.R.D. at 118.

D. Analysis of UFFI Trust Fund Contribution, Including Review of the Trust Fund Provisions, Reports of Communications with the DPH, the AG and Other Industry Members, Opinions on Colonial's Exposure Under the Repurchase Regulations and Assessments of Colonial's Fair Share Contribution, and Drafts of the Form of the Contribution Agreement Between Colonial and the DPH

As to documents in this category (36, 41, 42, 44, 150, 274, 291, 322, 323, 324, 328, 363 and 471), the plaintiff asserts an attorney-client privilege. All of the documents involve confidential communications between counsel and the plaintiff for the purpose of seeking legal advice. Documents in this category are therefore properly withheld.[11]

E. Communications with UFFI Customers After the UFFI Trust Fund Contribution

As to documents in this category (313–321, 334, 335 and 477), the plaintiff asserts an attorney-client privilege. With the exception of document 477, this court finds that the above documents are properly withheld. Document 477 lacks confidentiality and does not seek legal advice. The plaintiff is therefore ORDERED to produce document 477.

F. Various Requests for Repurchase and Lawsuits Against Colonial

As to documents in this category (21, 32, 43, 88, 135, 137, 139, 140, 151, 152, 164, 169, 170–175, 202, 228, 247, 254, 264, 276, 309, 326, 331, 368, 371, 373, 374, 376, 377, 384, 387, 388, 394, 396, 398, 399, 404, 405, 412, 417, 428, 432, 470, 492, 509, 510, 527, 540, 544 and 547), the plaintiff asserts an attor-

ney-client privilege. The plaintiff additionally asserts that the work product doctrine protects documents 404, 405 and 412. Documents 404 and 405 are properly withheld under the work product doctrine. The remaining documents in this category, with the exception of document 412, are properly withheld under the attorney-client privilege. A number of the documents involve settlement negotiations which are to be encouraged. *See AMCA International Corporation v. Phipard,* 107 F.R.D. 39, 41 (D.Mass.1985); *American Optical Corp. v. Medtronic, Inc.,* 56 F.R.D. 426, 431 (D.Mass.1972). Document 412 consists of a newspaper article describing one family's efforts to establish a movement of UFFI homeowners who have not had formaldehyde problems. As such, the document is not relevant to this litigation and for this reason need not be produced.

G. Bills for Legal Services not Billed to Aetna (With Underlying Details of Legal Work), Including this Suit

As to documents 177, 178, 217, 308, 330 and 542, the plaintiff asserts an attorney-client privilege. The plaintiff additionally asserts that the work product doctrine protects documents 308 and 330. As to the remaining documents in this category (37 and 268), the plaintiff asserts work product protection.

A number of these documents concern billing and the payment of fees neither disclosed or billed to the defendant. Documents regarding the payment of fees, billing and time expended are generally subject to discovery. *In re Grand Jury Proceedings,* 680 F.2d 1026, 1027 (5th Cir. 1982) (matters involving payment of fees generally not protected by attorney-client privilege); *see generally* 4 *Moore's Federal Practice* ¶ 26.60[2] & n. 8 (1991) (factual circumstances surrounding attorney-client relationship are discoverable). To the extent that time records and statements reveal the nature of the services provided, however, such documents are privileged. *Real v. Continental Group, Inc.,* 116 F.R.D. 211, 213–214 (N.D.Cal.1986).

**11.** The plaintiff also asserts that the work product doctrine protects document 471. Inasmuch as this document is protected under the attor-

ney-client privilege, this court need not address its protection as work product.

Documents 177, 178, and 217 are confidential and disclosure would reveal the nature of the services provided. These documents are therefore protected. Absent substantial need, document 268 also remains protected. The plaintiff fails, however, to satisfy its burden of proof as to documents 37, 308 and 330. The plaintiff is therefore ORDERED to produce documents 37, 308 and 330.

### H. Analysis of Insurance Coverage

 The plaintiff claims that the work product doctrine protects the following documents in this category: 58, 62, 63, 66, 68, 69, 75, 81, 84, 105, 120, 159, 203,[12] 206, 207, 219, 235, 237, 239, 244, 261, 262, 283, 289, 304, 342, 419, 438, 462 and 469. The majority of these documents (58, 62, 68, 75, 81, 84, 105, 120, 159, 206, 206, 219. 235, 237, 239, 261, 262, 283, 289, 304, 419 and 469) contain the mental impressions and theories of counsel and are therefore protected. With the exception of documents 438 and 462, the remaining documents in this category constitute work product. The plaintiff is ORDERED to produce documents 438 and 462 with the handwritten portions redacted.

### I. Communications Between Palmer & Dodge and Aetna

The plaintiff claims that the work product doctrine protects all of the documents in this category (1, 9, 10, 12, 13, 17–20, 22, 26, 30, 47, 61, 78, 86, 94–96, 98, 100, 101, 103, 109, 125, 127–131, 134, 136, 138, 142, 143, 154, 161, 163, 180, 181, 204, 221, 223, 224, 226, 227, 233, 234, 241, 243, 266, 295 and 302). After a careful reading of each document, this court finds that the plaintiff properly withheld all of the above documents.

### J. The Interim Agreement between Colonial and Aetna

The plaintiff asserts that documents 82, 83 and 256 are covered by the work product doctrine. This court agrees.

### K. Analysis of UFFI Repurchase Regulations

The plaintiff maintains that documents 71, 72, 160, 162, 193, 198, 200, 210, 212, 338, 339 and 341 are subject to the work product doctrine. With the exception of document 193, a summary of a telephone conversation, all of the documents reflect counsel's mental impressions and therefore constitute work product. Absent undue hardship and substantial need, document 193 also remains protected.

### L. Analysis of UFFI Trust Fund and Potential Payments to the Trust Fund, Including Opinions on Colonial's Exposure Under the Repurchase Regulations and Assessments of Colonial's Fair Share Contribution

As to documents in this category (55, 57, 345, 347–349, 356, 357 and 457), the plaintiff argues they are protected by the work product doctrine. A review of the documents establishes that the documents contain mental impressions and analysis and are therefore shielded from discovery.

### M. Communications with Representatives of Other "Industry Members" about the UFFI Trust Fund and Insurance Coverage Matters

 The plaintiff claims that documents 59, 67, 102, 146, 229 and 278 are subject to the work product doctrine. These documents consist of internal memos by counsel to the file detailing legal strategy and thoughts in anticipation of litigation. As such, this court agrees that the documents comprise counsel's work product.

### N. Communications with the DPH and AG on the UFFI Trust Fund Contribution

The plaintiff legitimately asserts that documents in this category (52, 70, 337,

---

**12.** The plaintiff also asserts the attorney-client privilege as to document 203. Inasmuch as this document is protected under work product, this court need not address its protection under the attorney-client privilege.

344, 346, 353, 361 and 367) constitute work product. Not only do a number of the documents reflect counsel's mental process, but there is a minimal showing of undue hardship.

### O. Communications with Colonial on its "Insulation Program" and Background Fact–Gathering on UFFI in Conjunction with the Defense of Various Claims Against Colonial

■ The plaintiff claims that documents 167, 196 and 199 constitute work product. The plaintiff also asserts attorney-client protection for documents 116 and 195. The plaintiff claims both attorney-client and work product protection for documents 2–4, 35, 166, 168 and 197. Documents 2–4 contain counsel's notes regarding witness interviews and are therefore shielded by the work product doctrine. Documents 116 and 195 are confidential communications from the plaintiff to counsel and are subject to the attorney-client privilege. Having reviewed the remaining documents, this court finds them properly withheld.

### P. Punchlists of UFFI Litigation Work to be Done

■ The plaintiff maintains that documents in this category (5, 48, 49, 51, 53, 73, 74, 76, 77, 108, 114, 115, 179, 231, 343 and 506) consist of counsel's work product. With the exception of document 179, these documents comprise counsel's legal theories regarding anticipated litigation. Absent substantial need and undue hardship, document 179 is also protected.

### Q. Analysis of Statute of Limitations and Causation Issues in Conjunction with the Defense of Product Liability Claims

Document 33, the sole document in this category, contains counsel's analysis of le-

gal theories in anticipation of litigation. The plaintiff therefore properly asserts work product protection.

### R. Drafting and Analysis of SEC Financial Disclosure Statements, Including Analysis of Work Product Question

The plaintiff asserts work product protection for documents 117–119, 121, 123, 186, 205, 245 and 294. This court finds these documents constitute work product.[13] This court also notes that, absent undue hardship, document 117 is protected.

### S. Communications with Representatives of Excess Carriers

The plaintiff correctly asserts that documents 8 and 187, internal memos to the file, constitute work product.

### T. Internal Colonial Notes and Memoranda of Communications with Palmer & Dodge on Various UFFI Matters Including UFFI Removal Claims, the Fletcher Suit, Insurance Coverage Matters and the UFFI Trust Fund Payment

The plaintiff contends that the documents in this category (124, 378, 407–409, 426, 454, 521 and 546) consist of work product. Having considered each document, this court finds the documents constitute work product.

### U. Correspondence Between Palmer & Dodge and Insurance Consultant on Insurance Coverage Matters at Issue in This Suit

■ The plaintiff argues that the work product doctrine protects the documents in this category (213–216). Unlike the attorney-client privilege, disclosure to third parties does not necessarily waive work product protection. *See generally* 8 Charles Wright and Arthur Miller, *Federal Prac-*

---

**13.** The plaintiff additionally claims that the attorney-client privilege applies to document 121. In light of this document's protection as work product, this court need not determine the applicability of the attorney-client privilege.

*tice and Procedure* § 2024 & 2025, n. 56 & 57 (1970) (disclosure to third parties does not waive work product immunity unless such disclosure substantially increases opportunity for opposing party to obtain information). Having examined documents 213–216, this court finds them properly withheld.

As a final matter, in its motion to strike (Docket Entry # 72), the defendant complains that the plaintiff's report fails to comply with this court's Order of September 24, 1991, inasmuch as the plaintiff failed to seek leave of court before including legal arguments in its report. The plaintiff's report, however, is cogent, well organized and, although the report may include legal arguments, this court found the report a helpful guide during its review of the 311 documents.

█ The defendant also states that the cursory nature of the plaintiff's privilege log makes it difficult for the defendant to determine which documents are being properly withheld. This court disagrees. The privilege log contains a description of each document, the sending and receiving parties, and the date of the document. To require additional disclosure would minimize the protection afforded by the privilege.

## CONCLUSION

The defendant's motion to compel (Docket Entry # 56) is ALLOWED in part and DENIED in part. The plaintiff is ORDERED to provide the defendant with the documents ordered above on or before March 30, 1992. The defendant's motion to strike (Docket Entry # 72) is DENIED.