van Gestel, J.
This matter is before the Court in connection with a request to extend preliminary in-junctive relief granted in favor of the plaintiff R. J. Kelly Company (“R.J. Kelly”). At issue is the power and authority of the Massachusetts Department of Environmental Protection (“DEP”) to compel a hazardous waste site cleanup professional (“LSP”) to provide the DEP with information about a site or a site owner that would otherwise fall within the protections of the attorney/client privilege[1] or the work product doctrine.[2] Before taking any action with regard to the preliminary injunction presently in effect, this Court will deal with the underlying privilege/doctrine applicability issues.
BACKGROUND
R.J. Kelly owns and operates property at 116 Cambridge Street, Burlington, Massachusetts (the “site”). There has been a long running battle with the DEP over underground contamination at the site. In connection with that battle, R.J. Kelly has engaged a series of LSPs to assist and to comply with the G.L.c. 2 IE cleanup requirements.
On May 4, 2004, the DEP issued to R.J. Kelly a “Notice of Intent to Assess Administrative Penalty” and an “Administrative Order and Notice of Noncompliance.” Both of these DEP orders have been administratively appealed and are pending before the Division of Administrative Law Appeals (“DALA”).
On September 10, 2004, the DEP issued Requests for Information (“RFIs”) to two of R.J. Kelly’s LSPs. These LSPs were serially the LSPs of Record for the site and also acted as consultants to R.J. Kelly in connection with matters relating to the DALA appeal proceedings and with a number of other issues related to the site, its condition, possible causes of the contamination such as up-gradient sources, settlement and related matters. In so doing, the LSPs worked closely with R.J. Kelly’s attorneys.
It is because R.J. Kelly, acting through its attorneys, considers much of the information sought from the LSPs by the DEP to fall within the attorney/client privilege or the work product doctrine that it seeks the present injunctive relief.[3]
DISCUSSION
An LSP is “an individual who, by reason of appropriate education, training, and experience ... is qualified to render waste site cleanup activity opinions that can be relied on as sufficient to protect public health, safety, welfare, and the environment.” G.L.c. 21A, Sec. 19. LSPs are licensed by the Board of Registration of Hazardous Waste Site Cleanup Professionals. Id. Their primary statutory responsibility is to render “waste site cleanup activity opinions” stating whether the requirements of G.L.c. 2IE, and the Massachusetts Contingency Plan (“MCP”)[4] that implements it, have been met. LSPs play a critical role in the enforcement of c. 2 IE and the MCP, and the competent performance of their duties is of significant public importance. 309 C.M.R. Sec. 4.03(1).
When an LSP submits a waste site activity cleanup opinion, he or she must “attest that, in his or her professional judgment, the waste site cleanup activity opinion upon which [the LSP’s seal] appears, complies with” applicable law. 310 C.M.R. Sec. 40.0169(3). An LSP must also “disclose and explain in the LSP Opinion the material facts, data, other information, and qualifications and limitations known to him or her which may tend to support or lead to an LSP Opinion contrary to, or significantly different from, the one expressed.” 310 C.M.R. Sec. 40.0015(2)(b).
There is a significant difference in view about the extent of an LSP’s obligations to provide information to the DEP. R.J. Kelly says that extent, for purposes here, reaches only to matters related to site cleanup activity opinions. The DEP argues for a broader reach, extending beyond the opinions to anything related to the site. This Court, at least for purposes of the application of the attorney/client privilege and the work product doctrine to an LSP’s work, believes that R.J. Kelly’s position is correct.
The attorney-client privilege is amongst the most hallowed privileges of Anglo-American law . . . Our earliest opinions describe the privilege as “very well established.” . . . The privilege fosters compliance with the law by “encouraging] clients to seek an attorney’s advice and to be truthful with the attorney, which in turn allows that attorney to give informed advice; the attorney client privilege [thus] serves the public interest and the interest of the administration of justice.”
In the Matter of a Grand Jury Investigation, 437 Mass. 340, 351 (2002).
“Considerable public benefit inures when an institution voluntarily scrutinizes its own operations for the purpose of seeking advice from counsel on how to comply with the law, particularly where today’s increasingly dense regulatory terrain makes such compliance ‘hardly an instinctive matter.’ Upjohn Co. v. UnitedStates, [449 U.S. 383, 392 (1981)].” Id. Compliance with environmental laws and regulations enforcing them certainly presents dense terrain.
The work product doctrine is “intended to enhance the vitality of an adversary system of litigation by insulating counsel’s work from intrusions, interferences, or borrowings by other parties as he prepares for the contest.” ... In order to fit within the *180 privilege, the materials must have been prepared in relation to litigation, pending or prospective.
Liacos, Brodin and Avery, Handbook of Massachusetts Evidence (Seventh Edition), Sec. 13.4.10. See also Ward v. Peabody, 380 Mass. 805, 817 (1980).
[A]ttomeys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared for the attorney as well as those prepared by the attorney himself.
United States v. Nobles, 422 U.S. 225, 238-39 (1975).
The LSPs here fall within that group of other agents or consultants to whom the work product doctrine applies.
In support of its position, the DEP points directly at In the Matter of a Grand Jury Investigation. But this Court sees a significant difference between that case and what is before it here. There, the parly compelled to report the information “knew, or should have known, that it was mandated to report [the victim’s] abuse under [G.L.c. 119,] Sec. 51A.”[5] In the Matter of a Grand Jury Investigation, supra, 437 Mass, at 363. There is no statute or regulation conveying such knowledge to LSPs, except for their obligations with regard to waste site cleanup activity opinions. Abrogation of the attorney/client privilege and the work product doctrine should not come about by inference or accident, nor should their demise be the product of creating a mosaic out of a melange of densely worded regulations.
This Court is further concerned that permitting the DEP to compel the production of documents covered by the work product doctrine, and perhaps even the attorney/client privilege, will result in those documents becoming “public records” subject to production under G.L.c. 66, Sec. 10 to anyone who asks. See General Electric Company v. Department of Environmental Protection, 429 Mass. 798, 801-03 (1999).
For the foregoing reasons, this Court concludes that the attorney/client privilege and the work product doctrine apply to those aspects of the work of R.J. Kelly’s LSPs for which such privilege and doctrine apply, except insofar as relates to any site cleanup activity opinions rendered to the DEP by those LSPs. The latter exception includes disclosure and explanation of any material facts, data, other information, and qualifications and limitations known to those LSPs which may tend to support or lead to an LSP opinion contrary to, or significantly different from, the ones expressed.
ORDER
For the foregoing reasons, the preliminary injunction effectively in place shall remain so, at least pending further resolution of which documents properly fall within the attorney/client privilege or the work product doctrine. In light of the Court’s determination of the applicability of the attomey/client privilege and the work product doctrine, except as relates to site cleanup activity opinions, the parties are directed to confer, in essence like a Superior Court Rule 9C conference, and attempt to work out their differences. Failing success in such a conference, the Court will entertain a fully supported Mass.R.Civ.P. Rule 37 motion to compel and any opposition thereto.
Further, the continued viability of preliminary in-junctive relief may well be dictated by the resolution of whether, and if so which, documents are agreed to be, or found to be, protected. In the event of any such agreement, the DEP’s rights to challenge this Court’s ruling on the applicability of the privilege and the doctrine are preserved.

See In the Matter of a John Doe Grand Jury Investigation, 408 Mass. 480, 482 (1990).

See Mass.R.Civ.P. Rule 26(b)(3).

There are other issues involved in the present request for relief that relate to whether — if this Court rules that the privilege or doctrine apply — all of the documents designated fit within the privilege or the doctrine. These other issues will be attended to after, not before or while, the underlying issue of whether the privilege or doctrine apply is resolved.

 310 C.M.R. Sec. 40.000 et seq.

See G.L.c. 119, Sec. 51A, relating to the abuse of a child, which uses the mandatory language, “shall immediately report such condition . . .”